**Susan H. BANKS, Appellant,**

v.

**HEUN–NORWOOD, a Division of Mogul Corporation, Appellee.**

No. 77–1278.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1977.

Decided Oct. 27, 1977.

Rehearing and Rehearing En Banc Denied Nov. 28, 1977.

· Gerald R. Ortbals, Clayton, Mo., argued and filed brief and reply brief, for appellant.

Donald H. Clooney (argued), Douglas B. Brockhouse and Dempster K. Holland, St. Louis, Mo., on brief and motion to dismiss amicus curiae, for appellee.

Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, and Lütz A. Prager and Gary T. Brown (argued), Attys., E.E.O.C., Washington, D.C., for amicus curiae, EEOC.

Before VAN OOSTERHOUT and MATTHES, Senior Circuit Judges, and STEPHENSON, Circuit Judge.

MATTHES, Senior Circuit Judge.

Susan H. Banks filed this action in the United States District Court for the Eastern District of Missouri against Heun-Norwood, a Division of Mogul Corporation.[1] The substance of the complaint is that the defendant violated 42 U.S.C. § 2000e–3(b), which provides in pertinent part:

It shall be an unlawful employment practice for an employer . . . to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer . . . indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin.

A resume of the pertinent evidence is sufficient for an understanding of the basis of this lawsuit.

Upon moving from California to Missouri in September, 1973, plaintiff endeavored to obtain employment in the St. Louis area. She is the holder of a Bachelor of Science degree in business administration from UCLA. In early November of 1973, while searching for employment, plaintiff observed an advertisement in a St. Louis County newspaper which we reproduce in full:

### ACCOUNTANT

Young man with a college degree. General Accounting through profit and loss. All detailed journal entries. Good opportunity for advancement. Excellent benefit program. Own transportation needed for west county location. 567–1546. (Tr. 157).

Plaintiff telephoned the number appearing in the ad. Her call was answered by a woman who did not identify herself, but simply responded with the number "567–1546." Plaintiff then stated: "I'm—, I'm applying for the job of accountant in the newspaper." The woman responded: "Let me transfer you to the party responsible." Thereupon, the call was transferred to defendant's general ledger accountant and plaintiff stated: "Is the job still open in the newspaper that is advertised." The response was: "Doesn't that newspaper ad read a young man?" This prompted plaintiff to reply: "Do you really mean you only want a young man?" The response was: "Yes." Thereupon, plaintiff stated: "Don't you know that to want only a young man is illegal and discriminatory?" After a brief pause, plaintiff made this inquiry: "Aren't you an equal opportunity employer?" To this inquiry the defendant's representative stated: "Oh, sure. I have many women working for me." Thereupon, plaintiff replied: "But I have a college degree. I have the general accounting background that you are asking for." The gentleman with whom plaintiff was conversing then stated: "Well, what are your salary requirements." Plaintiff replied: "Well, the last job that I

---

1. The defendant is a manufacturer of pharmaceutical products and operates a plant in St. Louis County, Missouri.

earned, the last job that I had earned $1,000 a month." This prompted the following response: "Oh, you know that figure is way too high. We're only looking for a salary for this job of $650 a month to $700 possibly." Plaintiff responded: "Thank you" and that terminated the conversation.

Plaintiff thereupon called her husband. Apparently at his suggestion, plaintiff recalled the number appearing in the ad and requested the name of the company. This information was furnished. Plaintiff then called the EEOC to file a complaint of discrimination. In the course of a few days, plaintiff received the necessary form which plaintiff completed and returned to the EEOC. Therein she imparted the substance of the ad and conversation above related. This was introduced in evidence as plaintiff's exhibit and it shows on its face that it was received by the EEOC on November 21, 1973. Plaintiff readily admitted that she did not file a formal application for employment with defendant, never talked again to anyone at defendant's office in St. Louis County, and took no further action until approximately a year later when she was again contacted by a representative of the EEOC. On that occasion, she prepared an affidavit setting forth the substance of the ad and telephone conversation. It was at approximately that time plaintiff learned that the individual with whom she had discussed the position was Mr. Orville E. Helmich, defendant's general ledger accountant in November of 1973. After her second contact with the EEOC, that agency, on November 17, 1975, issued its notice of right to sue letter and forwarded the same to the plaintiff. The present action was filed by plaintiff on February 11, 1976, nearly twenty-seven months after the telephone conversation with Mr. Helmich.

Plaintiff did not seek an injunction in her complaint, but prayed only for a money judgment. Specifically, she sought the income lost from the date that she claims she was wrongfully denied employment by defendant to the date of her successful employment by another company, with six percent interest thereon from November 13, 1973, as well as exemplary damages in the sum of $30,000, attorney's fees, costs, and other appropriate relief.

After a bench trial, the district court filed its findings of fact and conclusions of law. The findings coincided with the evidence above related with respect to the ad and the telephone call. Consistent with the evidence, the court further found that plaintiff had applied for work at other places and had accepted part-time employment, and that on December 9, 1974, she accepted a permanent accounting position with Mallinckrodt, Inc. for $950 per month. During the trial, on December 20, 1976, plaintiff testified that her salary at Mallinckrodt, Inc. was $13,100 per year.

The evidence established that the defendant's accounting position had previously been held by a young man at a salary of $700 per month (later increased to $740 per month). It was further developed by the company records that the position was eventually filled by a young man whose beginning salary was $600 per month (later increased to $780 per month). The records of defendant also proved that the last accountant had received an automatic increase of $100 per month at the end of a ninety-day probation period. Finally, the trial court found that it was not until May 9, 1975, when an EEOC investigator took a statement from Mr. Helmich, that the defendant became aware of the identity of the person making the telephone call.

Based upon its findings, the district court concluded that the plaintiff had failed to make an appropriate application for the position and had failed to pursue the matter further because the salary range suggested by defendant's representative in the telephone conversation was too low. Consequently, the court concluded that there was no sex discrimination "on the basis of the facts in this particular case."

Plaintiff has appealed and submits numerous contentions in order to persuade us to reverse the judgment. Stripped of all nonessentials, plaintiff's theory is that because the advertisement specified that the defendant was seeking a male to fill the

position of accountant, a per se violation of 42 U.S.C. § 2000e–3(b), this case falls within the rule that plaintiff would have been engaging in a futile gesture if she had pursued the matter and made a formal application for the position.

For the reasons stated below, we do not subscribe to plaintiff's position, and accordingly affirm the judgment of the district court.

It is hardly open to debate that the defendant violated the unambiguous provisions of § 2000e–3(b) by advertising for a *male* accountant. However, this act of sex discrimination, which defendant only mildly defends, does not necessarily entitle this plaintiff to a money judgment of considerable proportions and a substantial attorney's fee.

The controlling question is whether the proscribed conduct of the defendant effectively aggrieved plaintiff. In other words, did the ad and the ensuing telephone conversation with Helmich have an impermissible, deterring effect on plaintiff?

The essential elements of a Title VII case are enunciated in what has become known as the landmark case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff concedes here, as she did in the district court, that to make a prima facie case under *McDonnell*, she had the burden of proving (1) that she belonged to a protected class; (2) that she applied for a job for which the defendant sought an employee; (3) that despite her qualifications for the job, she was rejected; and (4) that the job she sought remained open to other applicants with the same or similar qualifications after her rejection.

Although the criteria enunciated in *McDonnell* must be regarded as the basic guidelines in typical discrimination cases, the Supreme Court recognized that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n.13, 93 S.Ct. at 1824.

The key to this controversy is whether plaintiff has brought herself within the second and third criteria of the *McDonnell* test. That is, did she, within the meaning of the law, apply for the position? And if she did, was she rejected by the defendant?

 Sound authority dictates that where a person seeking employment is effectively deterred by the discriminatory policy or conduct of the employer, the complaining party is not required to formally apply for the position in order to seek and obtain relief because of the discrimination. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Hailes v. United Air Lines*, 464 F.2d 1006 (5th Cir. 1972); *McDonald v. General Mills, Inc.*, 387 F.Supp. 24, 36–37 (E.D.Calif.1974); *cf. Peltier v. City of Fargo*, 396 F.Supp. 710, 720–23 (D.N.D.1975), *rev'd on other grounds*, 533 F.2d 374 (8th Cir. 1976) (failure to apply unexplained); *Lea v. Cone Mills Corp.*, 301 F.Supp. 97, 102 (M.D.N.Car.1969), *modified on other grounds*, 438 F.2d 86 (4th Cir. 1971) (back pay denied where applicants sought test case, not actual employment).

In our view, *Hailes v. United Air Lines, supra*, is particularly instructive, although not dispositive of the issue we are required to resolve. In *Hailes*, United Air Lines placed a newspaper advertisement for stewardesses under the "Help Wanted—Females" column, but placed no corresponding advertisement under the "Help Wanted—Males" column. After reading the advertisement, Hailes filed a charge of discrimination with the EEOC. He never applied for the job of stewardess (or cabin attendant), nor did he communicate in any way with United. After the EEOC issued a right to sue letter, Hailes brought an action charging United with violation of 42 U.S.C. § 2000e–3(b). The district court dismissed the action for lack of subject matter jurisdiction and for failure to state a claim. The first question which the court of appeals answered was whether Hailes was an aggrieved person under 42 U.S.C. § 2000e–5(e). The court of appeals held that Hailes' pleadings were facially sufficient to demon-

strate that he was an aggrieved person. According to his complaint, he had previously read a similar advertisement by another airline, but when he applied for the position he was turned away because of his sex. "Thus, he alleges, he reasonably believed that any job application to United would be similarly futile." *Id.* at 1008. The upshot of the appeal was a remand for further development by trial or otherwise and a determination by the district court of whether "Hailes was reasonably inhibited in violation of his Title VII rights from seeking employment with United." *Id.* at 1009.

We are constrained to hold that because of vital distinctions between *Hailes* and our case, *Hailes* does not compel a reversal or the granting of any relief to plaintiff. Unlike the facts presented by this record, in *Hailes* the improper ad, coupled with Hailes' prior experience in being denied employment by another airline because of his sex, effectively deterred him from seeking the job. So it may be said with confidence that to have applied would have been a futile gesture on his part.

■ Here, despite defendant's discriminatory ad, plaintiff was not deterred from inquiring about the job. It was only when she was informed by Helmich that plaintiff's implicit demand of $1,000 per month was "way too high" and that he was thinking in terms of $650 or possibly $700 per month as a starting salary that plaintiff's interest in the position changed. Although the inference is reasonable that Helmich was susceptible to negotiating a salary, the plaintiff abruptly terminated the telephone conversation with a "thank you." Thus, we find no rational basis for concluding that the district court was clearly erroneous in holding that the ad did not deter plaintiff, and that she failed to pursue the matter "because the salary range was too low." [2]

Unlike many of the reported discrimination cases, there is not a scintilla of evidence in this record to show that defendant had adopted or practiced a pattern of discrimination on account of race, color, religion, national origin, or sex. Indeed, the evidence showed, and the court found, that at the time in question sixty-one percent of the 125 employees in defendant's St. Louis County plant were women. Of the fifteen employees in the accounting department, thirteen were women and two were men.

It is likewise significant that Helmich's statement to plaintiff regarding the salary was not pretextual. As shown above, the man previously employed as the accountant was initially paid a salary of $700 per month which had been increased to $740 per month before he resigned. The successor to the former accountant received a beginning salary of $600 per month, which was eventually increased to $780 per month.

Finally, unlike *Hailes*, this case was fully tried and it is obvious from the record that the respective positions of the plaintiff and defendant were fully ventilated before the district court. We find no sound basis for holding that the court's findings were clearly erroneous or that they were induced by a misconception of the law.

In conclusion, we reiterate that facially the ad in question contravened § 2000e–3(b). Nevertheless, on the rather unique facts of this case, we are driven to the conclusion that plaintiff was not aggrieved, and that the ad did not impermissibly deter her from pursuing the matter further.

### Relief Sought By Amicus Curiae

The EEOC, although fully apprised of the relevant facts and having issued the right to sue letter, failed, for reasons not appearing in the record, to further pursue the cause on its own initiative. That agency was authorized to initiate an action against

---

2. It is interesting to note that in the *Hailes* case, the court of appeals, in responding to the contention that Hailes was not aggrieved because he did not apply for employment, stated:

The very appearance at an employer's office of one who had read the discriminatory ad but nevertheless continued to seek the job, would demonstrate that the reader was not deterred by this unlawful practice and therefore not aggrieved. 464 F.2d at 1008.

the defendant based on the claimed discriminatory conduct, 42 U.S.C. § 2000e–5, but chose not to do so. The EEOC could have sought leave to intervene as a party in the district court under Fed.R.Civ.P. 22, but the EEOC did not interest itself in the action in the district court other than to seek to quash purported service of a subpoena duces tecum ad testificandum.

The EEOC did, however, file an amicus brief in this court, and pursuant to Fed.R. App.P. 29, was allowed to participate in the oral argument. To the surprise of the panel of judges which heard the case, the EEOC, in its brief and oral argument, strenuously urged this court to remand this case to the district court for the issuance of an injunction including "at least the requirements that: (1) for future openings in non-clerical, white-collar positions, over the appropriate period, the company should specifically advertise the fact that it is seeking, *inter alia*, qualified females and (2) the company should maintain a file of qualified female applicants for such positions." This relief was requested despite the failure of the EEOC to appear in the district court and affirmatively seek any relief; and despite the fact that plaintiff did not see fit in her complaint, in the trial of the case in the district court, or in this court, to seek an injunction; and further despite the fact that the evidence completely foreclosed any finding or conclusion that the defendant has, at any time in the past, pursued a policy of discrimination against a protected class, or that it has in fact engaged in such conduct in any isolated case. Neither is there any evidence to warrant a finding or inference that defendant will in the future violate any of the anti-discrimination statutes.

Subsequent to the filing of the brief of amicus in this court and defendant's opposition to the relief requested by the EEOC, that agency submitted another memorandum of authority in a letter sent to the Clerk of this court.

We recognize that under Fed.R.Civ.P. 54(c), every judgment entered by the district court shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. We are likewise familiar with the statute, 28 U.S.C. § 2106, which grants to this court the power to

> . . . affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review . . . and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

██ Discussion of the numerous authorities cited pro and con on the subject by the amicus and the defendant would serve no beneficial purpose and tend only to unduly prolong this opinion. It is sufficient to conclude with the observation that this is not the proper case to grant the amicus the affirmative relief requested for the first time on appeal. To take such action could, in our judgment, establish a precedent which would not advance the proper administration of justice. Certainly, common fairness dictates that before a district court is directed to grant an injunction, that court should be properly requested to do so before, during, or at the conclusion of the trial by the party claiming to be aggrieved. Moreover, the opposing party should have the opportunity to present evidence on the propriety of an injunction. In short, we do not condone the procedure that the EEOC is seeking to invoke in this court.

Having carefully considered all contentions raised and presented by the appellant, we conclude that the district court reached the proper result and consequently, the judgment is in all respects affirmed.

### Statement on Denial of Petition for Rehearing En Banc

BRIGHT, Circuit Judge.

Although I question the result reached by the panel in this case, I have not requested a rehearing *en banc*. The plaintiff-appellant has conceded, erroneously in my judg-

ment, that *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), represents the appropriate test for analysis of the merits of this case. I write my views to reflect my disagreement with the use of the *McDonnell Douglas* analysis here.

The *McDonnell Douglas* test is wholly inappropriate in this type. of case. In *McDonnell Douglas,* the Supreme Court provided guidelines for establishing discriminatory conduct where the employer's conduct is so subtle that the plaintiff cannot prove discrimination directly. In the present case, the employer's conduct is neither subtle nor indirect. The employer here openly announced its interest in employing only males for the advertised position. The panel agrees that the employer's conduct violated section 2000e–3(b). We therefore are not confronted with the question of whether the plaintiff made out a prima facie case of discriminatory conduct. The question is whether the employer's discriminatory conduct injured the plaintiff, entitling her to relief.

This employer's conduct would ordinarily deter a qualified woman from applying for the accounting position. Ms. Banks, however, was not deterred from making a telephone inquiry. At the outset of the telephone conversation, the employer's representative erected a further roadblock to her application: "Doesn't that newspaper ad read a young man?" When Ms. Brown pressed her cause further, she encountered a third roadblock, that of employer disinterest because her prior earnings were "way too high."

In my judgment, Ms. Banks made a strong showing that she was deterred from making a formal application for the vacancy because the prospective employer exhibited prejudice against women with relation to that job opening.

Ms. Banks' status as a prospective employee was akin to that of the prospective applicant for employment, Hailes, in *Hailes v. United Air Lines,* 464 F.2d 1006 (5th Cir. 1972), except that Ms. Banks presented a far stronger case for relief.

Under the *Hailes* doctrine, the question of a right to relief rests upon whether the employer's conduct "inculcate[d] a reasonable belief" that a formal application would be futile. 464 F.2d at 1009. The *McDonnell Douglas* test, as applied in this case, *supra* at 1076, however, focuses upon whether the defendant-employer has rejected the application. That is a different test.

In another similar case, utilization of the approach followed in *Hailes* may very well require a result contrary to that reached by the district court in this case.

I am authorized to say that Circuit Judge Heaney joins in the foregoing statement.