Allen D. HORN, Appellant,

v.

HALLMARK CARDS, INC., & Westin
International Hotels, d/b/a Crown
Center Hotel, Respondents.

No. WD 34233.

Missouri Court of Appeals,
Western District.

Feb. 21, 1984.

Kenneth C. Hensley and John H. Norton, Kansas City, for appellant; Norton, Pollard & Norton, Inc., Kansas City, of counsel.

Charles E. Patterson and Leonard Singer, Kansas City, for respondents; Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

Before PRITCHARD, P.J., and SHAN-GLER and BERREY, JJ.

PRITCHARD, Presiding Judge.

This is a service letter case, § 290.140, RSMo 1978, in which the jury returned a verdict for plaintiff for $1.00 actual damages and no punitive damages. The points presented assert error in the exclusion of evidence and denial of argument matters to the jury.

At the outset of the trial, by leave of court, plaintiff amended the second amended petition to reduce the prayer for actual damages to $1.00, and to increase the prayer for punitive damages from $50,000 to $250,000. It should be noted that in 1982,

the service letter statute was amended to exclude punitive damages except where there was a failure to issue a requested letter, but the amendment was held not to be retroactive in *State ex rel. Deering v. Corcoran*, 652 S.W.2d 228, 229[2] (Mo.App. 1983). The cause of action here is alleged to have arisen in 1978. The sole respondent is Westin International, plaintiff having dismissed as to Hallmark Cards, Inc.

Clifford E. Winkfield had been employed as director of security for the Crown Center Hotel when it opened from April, 1973, to August, 1977, when he resigned to become Chief of Police for Roeland Park, Kansas. Plaintiff, Horn, had been Winkfield's assistant for a number of years prior to August, 1977, during which time Winkfield testified that plaintiff's work performance was good. On August 15, 1977, plaintiff was promoted to director of security (the position previously held by Winkfield), and served in that position until his discharge on November 10, 1978. Three days afterward, Winkfield was rehired to that position.

Subsequently, plaintiff consulted a lawyer and a request for a service letter was made. The instant letter of November 30, 1978, was issued by respondent. In pertinent parts it set forth: "From August 15, 1977 through May 31, 1977 (sic), it was the opinion and judgment of management that the character of the services rendered by you was generally good; however, company records reflect that you needed to improve your follow-through and response time to projects and to improve your supervisory contact with your superiors. In the opinion and judgment of management, during the period of May 31, 1978 through November 10, 1978, the character of the services rendered by you ranged from marginally acceptable to unacceptable. On November 10, 1978, you were terminated by the Hotel. The true reason for your termination was that in the opinion and judgment of management, your lack of follow-through on work assignments and job projects and poor administrative skills reduced the effectiveness of the Security Department to an unacceptable low level.* * *."

Winkfield was called by plaintiff as an adverse witness under § 491.030, RSMo 1978, and was asked, "Q. Did you ever falsify any of those [plaintiff's] records while you were Director of Security, Mr. Winkfield? A. Absolutely not." [Brackets added.] Plaintiff also called as a witness Jeannie Rasmussin, who had been an administrative assistant to both Winkfield and plaintiff, keeping records and reports for them. She was asked, "Q. Did Mr. Winkfield ever ask you to falsify a report?" An objection was made upon the ground of irrelevancy. There followed considerable colloquy with the court during which plaintiff's counsel told the court that the witness' answer would be that on one occasion, Mr. Winkfield, after noticing the report she was making, instructed her to change it so that it would not appear to be at a high rate of incidence. Later on, counsel stated, "Offer of proof would be that if the witness were allowed to answer the question, that her answer would be that Mr. Cliff Winkfield on one occasion told her to change a departmental report which reflected the number of incidents, the number of guest thefts, the number of other incidents and that he also made the statement at that time—THE COURT: To lower them, you mean? MR. HENSLEY: Right, also made a statement at that time: 'Lower these so they don't look too high,' or 'change these so they don't look so high.' And I think the evidence would further be, if allowed to ask this question: Were there any other occasions upon which Mr. Winkfield changed the security reports, and her answer would be that on at least one occasion she observed him changing the security reports after she had prepared it from the documents that they had kept there in the security department. MR. NORTON: That constitutes our offer of proof. THE COURT: Objection is sustained."

It is noted that the service letter given to plaintiff recited that the services rendered by him through May 31, 1978, were generally good. The time frame during which the quality of his services declined was

from May 31, 1978, through November 10, 1978. There was no showing that Winkfield had anything to do with the records during that time, or that he had access to them. Indeed, he was not even employed by Crown Center during that period of time. It is also noted, according to the offer of proof, that Rasmussin was instructed to lower the number of guest thefts and other incidents, which would seem to reflect a better experience in the security department, not something that would reflect poorly on plaintiff's performance.

■ The offer of proof lacked any matter as to the time the records were said to be falsified; what records were affected; how any such falsification bore on plaintiff's performance as director of security so as perhaps to bear upon the issue of legal malice, or as to the true reason for plaintiff's discharge. As made, the offer of proof did not show any relevancy to the case. "An offer of proof must show all the facts necessary to establish the admissibility of the testimony sought to be introduced (citing cases), in sufficient detail to demonstrate its relevancy and materiality." *Kinzel v. West Park Investment Corporation*, 330 S.W.2d 792, 795[1–3] (Mo.1959). See also the discussion at page 796[4], of the Kinzel case as to the offer of proof there being general, vague and indefinite; and *Johnson v. Johnson*, 628 S.W.2d 709, 713[5–7] (Mo.App.1982). Nor was the offered testimony admissible to impeach Winkfield, as he had not been confronted with the question about his directing Rasmussin to falsify records. *State v. Denmon*, 635 S.W.2d 345, 348[1, 2] (Mo.1982). As to the matter of his denial that he had never personally falsified records, the offer of proof, supra, was insufficient to show that he had done so with respect to time, place, specific records, or that such, if true, had anything to do with the reasons for plaintiff's discharge. Point I, contending error in the exclusion of Jeannie Rasmussin's testimony, is overruled.

■ In Point II, plaintiff complains about the exclusion of the testimony of Winkfield's former wife as to a statement made by him to her during their marriage, the duration of which was from June 11, 1971 to December 14, 1979. During that time Winkfield told her that he would get his old job back at Crown Center, and that it takes time to terminate a man (presumably plaintiff), and that there has to be a reason for termination. The trial court sustained an objection to that testimony, ostensibly on the husband and wife privileged communication under § 491.020, RSMo 1978. That matter need not be further pursued, because the testimony of the wife as to what the husband said (even if it is not hearsay) goes merely to the issue of the true reason for plaintiff's discharge, and the jury has found that the service letter did not state the true reason for his termination of employment. See *Stone v. Farmington Aviation Corporation* 360 Mo. 1015, 232 S.W.2d 495, 499[4] (1950); 5A C.J.S. Appeal & Error, § 1745, p. 1083, et seq.; and *Waddle v. Commonwealth Insurance Company*, 184 Mo.App. 571, 170 S.W. 682, 683[3] (Mo.App.1914). Point II is overruled.

■ By Point III, plaintiff says that the trial court erred by not permitting him to argue that the service letter was in violation of the law because it was general, non-specific in character, and constituted a blanket indictment of plaintiff's services. In Point IV, plaintiff says that the court likewise erred in prohibiting argument that the service letter was false because it did not reflect the opinion and judgment of management contrary to the express statement in the letter, and contrary to the evidence. Again, the arguments relate to the issue of whether the service letter stated the true reason for plaintiff's termination of employment. All of the contentions in Points II, III and IV, if there were errors, were cured by the jury's verdict for plaintiff and for $1.00 nominal damages, which necessarily includes the finding that the reason for discharge, as stated, was not the true reason therefor. See, comparably, 5 Am.Jur.2d Appeal and Error, § 805, p.

247. Compare also *Roper v. Wadleigh*, 219 S.W. 982, 984[6, 7] (Mo.App.1920).

The judgment is affirmed.

All concur.