**Vicki EASLEY, Appellee,**

**v.**

**EMPIRE INCORPORATED and Empiregas, Inc. of Wheaton, Appellants.**

**No. 84–1305.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1984.

Filed March 20, 1985. Rehearing and Rehearing En Banc Denied April 24, 1985.

**924**

Steven G. Emerson, Kansas City, Mo., for appellants.

Ransom A. Ellis, III, Springfield, Mo., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Empire Incorporated and Empiregas, Inc. of Wheaton appeal judgments in favor of Vicki Easley on her claims of sex discrimination in violation of federal equal employment law, Title VII, 42 U.S.C. § 2000e–2

(1982), and of failure to timely respond to a request for a service letter in violation of section 290.140 of the Missouri Revised Statutes. Empire argues that the district court[1] improperly directed a verdict on the service letter issue and that punitive damages were barred by a subsequent amendment to the relevant statute, that there was insufficient evidence to support the finding of sex discrimination, and that the amount of the attorney fee award was so excessive as to constitute an abuse of discretion. We find little merit in any of these arguments, and we affirm.

Vicki Easley had been office manager for Empiregas, Inc. of Wheaton, a wholly-owned subsidiary of Empire Incorporated, for more than three years when, on January 7, 1978, the position of retail manager, that of her immediate superior, became vacant. Easley told Joe Leikam, the Empire employee who had supervisory responsibilities over Empiregas, that she would like to apply for the job. Leikam, however, responded, "You know men do not like to take orders from women," a comment later echoed to Easley by Darrell Kays, Leikam's superior at Empire. Despite several such oral requests for promotion by Easley, the Empiregas retail manager position remained open, and Leikam continued seeking applicants, until June 22, 1978, when Joseph Agofsky was hired. Subsequently, Easley refused to defer her vacation plans to assist in training Agofsky and acquainting him with office procedures. When she returned on July 20, 1978 (the date July 19 also appears in the record), she contacted Leikam concerning rumors that she was to be terminated. Leikam said he would be coming to Empiregas soon to talk over the matter, but Easley persisted, a heated discussion ensued, and Leikam discharged Easley over the phone.

On September 13, 1978, Easley filed discrimination charges with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, a prerequisite to Title VII litigation. *See* 42 U.S.C. § 2000e–5 (1982). Nearly three years later, on August 13, 1981, she wrote to Leikam requesting a letter "showing the dates of my employment, the kind of work that I did, including my duties and responsibilities and the reason for my termination." Leikam consulted with Kays, and Kays referred the letter to the attorney handling the discrimination complaint. Easley then received authorization to proceed with her Title VII action, and in November she filed suit in federal district court on two counts, the first alleging that Empire discriminated on the basis of sex both in failing to make her retail manager and in discharging her and the second alleging that Empire violated the Missouri service letter statute. On January 23, 1982, Easley made a second request for a service letter, this time directed to Kays, who again referred the matter to the attorney. The district court permitted Easley to amend her complaint to allege a second service letter violation. The required letter was finally provided to Easley on April 1, 1983, shortly after Empire's initial counsel withdrew and was replaced.

After a jury trial on the service letter issue, the district court directed a verdict and an actual damage award of $1 for Easley. The jury assessed $40,000 punitive damages against Empire. The discrimination claim was tried to the district court, which found that Easley had orally requested the retail manager's job, that she was a qualified applicant, and that Leikam had continued to interview similarly qualified applicants for the position. The district court rejected as pretextual Empire's claim that it failed to promote Easley because she was performing unsatisfactorily as office manager and held that Easley had been the victim of unlawful sex discrimination in this regard. The court, however, found that Easley's discharge was justified by her failure to obey the order to defer her vacation plans to train Agofsky.

---

1. The Honorable Russell G. Clark, Chief Judge, United States District Court for the Western District of Missouri.

Relief thus was limited to back pay in the amount of $1,808.22, the difference between the office manager's and retail manager's salary for the period from the approximate date of Easley's first request for promotion to the day of her discharge. The district court further awarded Easley $30,000 in attorney fees, reducing the amount initially sought by more than half because she prevailed on only part of her discrimination claim. The court, however, rejected Empire's argument that the minimal dollar recovery and contingent fee arrangement required further reduction of the fee award, holding that Easley had provided the public a great service by successfully proving intentional sex discrimination by a large corporate employer.

## I.

In challenging the directed verdict in favor of Easley on the service letter claim, Empire alleges first that the district court improperly acted sua sponte. In addition, Empire contends that the court was incorrect in holding as matters of law that Easley was an "employee" of Empire (and not just of Empiregas) within the contemplation of the Missouri service letter statute, that Easley's first letter to Leikam did constitute a request for a service letter, and that Empire did not respond to Easley's requests within a statutorily "reasonable" time.

■ The shortest answer to these contentions addresses Empire's concern with the alleged sua sponte nature of the district court's action in directing a verdict. Easley in fact made a motion for such a verdict before the introduction of any evidence on the basis of the following comments during opening statement by Empire's counsel:

> We anticipate that because the letter was not sent promptly, because the letter was not sent within a few weeks or a month, that you will award $1 in nominal damages for the violation of the Missouri statute.
> The letter was not sent within a few weeks, it was not sent within a few

months, and because of this we expect you will be instructed to award $1 in actual damages to this plaintiff.

\* \* \* \* \* \*

> The evidence will be that the Empire's employee response was reasonable under the circumstances, *even though they technically violated the Missouri service letter statute.*

Transcript at 23–24, 32 (emphasis added). The district court recognized that a directed verdict would be appropriate but deferred final ruling pending submission of evidence. The court's ultimate action at the close of all evidence could not be erroneous in light of the clear admissions of counsel in opening statement. *See Oscanyan v. Arms Co.*, 13 Otto 261, 263, 103 U.S. 261, 263, 26 L.Ed. 539 (1880); *Stuthman v. United States*, 67 F.2d 521, 523 (8th Cir. 1933); *Hays v. Missouri Pacific Railroad*, 304 S.W.2d 800, 803 (Mo.1957).

■ We also agree with the district court that issues of control, rather than the "piercing the corporate veil" theory urged by Empire, should determine whether Easley was an employee of that corporation or just of its subsidiary. Empire argues that proper interpretation of the statutory term "employee" requires consideration of the purpose of the service letter provision, which is to "deter corporate employers from destroying or severely impairing the employability of former employees by furnishing false or misleading information as to their service or false reasons for their discharge." *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 123 (Mo.1983) (en banc). This purpose, however, implicates the entity having control over personnel matters, and in this case that entity is Empire, rather than Empiregas. Easley's initial employment as office manager had to be approved by Kays, an employee of Empire; her request for the retail manager's position was made to Leikam and Kays, employees of Empire; and she was fired by Leikam, an employee of Empire. The district court further found that all salary and promotional decisions regarding

Empiregas personnel were made by Empire. The district court properly decided this issue as a matter of law.

■ Finally, insofar as further discussion is called for, we are satisfied that the district court did not err in ruling that Easley's first letter to Empire was, as a matter of law, a request for a service letter. Easley asked for a letter showing the dates of her employment, the kind of work she had done, and the reason for her termination—substantially the information Empire was required to provide under section 290.140.[2] Such language has been held sufficient to constitute a service letter request. *E.g., Carr v. Montgomery Ward & Co.,* 363 S.W.2d 571, 575 (Mo.1963). Similarly, the determination whether Empire's response to the service letter request was made within a reasonable time does not become an issue of fact for the jury because, as argued by Empire, of the alleged ambiguous nature of Easley's request giv-

en the pending sex discrimination charges, particularly since the letter was sent by Empire to its lawyer for response shortly after receipt.

## II.

■ Even assuming a service letter violation, Empire argues that the district court erred in submitting the issue of punitive damages to the jury because such an award was barred by amendments, effective August 13, 1982, to the service letter statute. *Compare* Mo.Rev.Stat. § 290.140 (Supp.1984) *with* Mo.Rev.Stat. § 290.140 (1978). The only Missouri court to address circumstances like those here, however, has held that section 290.140 should not be applied retroactively so as to preclude punitive damages as to claims filed before the amendment. *State ex rel. Deering v. Corcoran,* 652 S.W.2d 228 (Mo.Ct.App.1983).[3] Furthermore, we ordinarily defer to the

---

2. The Missouri service letter statute at the time of Easley's discharge read as follows:

> Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment.

Mo.Rev.Stat. § 290.140 (1978). The subsequent amendment of this statute, discussed *infra* section II (*see* Mo.Rev.Stat. § 290.140 (Supp.1984)) made no material change in the language relevant here.

3. The other cases cited by the parties apparently all involve instances where the plaintiff had actually received a jury verdict and judgment of

punitive damages before the amendments to the service letter statute took effect. *E.g., Crompton v. Curtis-Toledo, Inc.,* 661 S.W.2d 645, 651 (Mo. Ct.App.1983); *Musselman v. Anheuser-Busch, Inc.,* 657 S.W.2d 282, 285 (Mo.Ct.App.1983); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 159 (Mo.Ct.App.1983). *Arie* does contain language, incorrectly cited by Empire as the "holding" of the case, to the effect that judgment vests a right to punitive damages in the plaintiff and that prior to such vesting there is no constitutional problem with retroactive application of a statutory amendment to bar such a remedy. 648 S.W.2d at 159. This passage barely rises to the level of dicta because, read in context, it is more just a summary of the holdings of courts in other jurisdictions rather than an affirmative adoption of those views for Missouri. In addition *Arie* in this regard is looking only to what is constitutionally permissible and not to whether the Missouri legislature intended for section 290.140 to be applied retroactively. *Deering* and *Arie* are in fact consistent in using the Missouri general savings clauses, Mo.Rev.Stat. §§ 1.170, 1.180 (1978), to find that the legislature did not intend for amendments to the service letter statute to apply retroactively to preclude punitive damages either where the case had been filed or where judgment had been reached respectively. *Deering,* 652 S.W.2d at 229; *Arie,* 648 S.W.2d at 159. *Deering* specifically reserved the question of retroactivity as to a suit based on preamendment violations but not *filed* until after the changes took effect. 652 S.W.2d at 230. *See Horn v. Hallmark Cards,* 672 S.W.2d 84, 85 (Mo. Ct.App.1984) (dicta).

decision of an experienced district judge on a question of state law. *Bergstrom v. Sambo's Restaurants,* 687 F.2d 1250, 1255 (8th Cir.1982).

Empire also argues that there was insufficient evidence that it "did a wrongful act intentionally or without just cause or excuse" to support an award of punitive damages. *Stark v. American Bakeries Co.,* 647 S.W.2d 119, 123 (Mo.1983) (en banc). We can interfere with the conclusion of a jury, however, only when there is a " 'complete absence of probative facts' " to support the verdict. *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), *quoted in Elliott v. St. Louis Southwestern Railway,* 487 S.W.2d 7, 14 (Mo.1972).[4]

■ Easley testified that when Leikam fired her he used strong language and that when she told him she was going to bring a discrimination suit, he said it would be a "cold day in hell" before she would ever get any money. Vicki Reed, the Empire-gas employee who signed for the registered envelope to Leikam which contained Easley's first service letter request, testified that Leikam threw the letter on the floor, criticized her for signing for mail addressed to him, and told her to stay away from Easley, whom he called a "troublemaker." Leikam also repeated at that time his comments about Easley's chances of obtaining redress from Empire. Empire argues that much of this showing of ill will between Easley and Leikam is irrelevant to the issue of legal malice in the failure to promptly issue the service letter. Missouri

cases, however, allow that actual malice, i.e., the intent to injure another, also may be the basis for punitive damages, and the evidence here is such that the jury could infer an intent by Empire to frustrate Easley in the exercise of her rights. *See Schmidt v. Central Hardware Co.,* 516 S.W.2d 556, 560 (Mo.App.1974) (evidence, if believed by jury, would support conclusion that corporation's failure to issue a service letter was the result of actual malice due to the employee's filing of a workmen's compensation claim).

■ Empire also argues that there was no evidence of legal malice in its failure to issue a service letter because the true reasons for the delay were the pending sex discrimination charges, uncertainty as to the nature of Easley's request, and a good faith belief that the counsel to whom the letter had been referred would handle the matter. The jury, however, was free to determine issues of credibility and to reject Empire's proffered reasons if it saw fit. *See Anderson v. United States,* 561 F.2d 162, 167 (8th Cir.1977). There was testimony that Kays was aware that the service letter request had to be answered, and there was evidence, in the form of superseded pleadings, that Empire might have been searching for an excuse for its failure to meet its legal duty or trying to hinder Easley's attempts to obtain a letter.[5] Furthermore, the jury could have found legal malice in Empire's failure twice to issue the requested service letter. *Bubke v. Allied Building Credits,* 380 S.W.2d 516, 522 (Mo.

**4.** Because Missouri and federal standards are the same, we need not agonize over whether in diversity cases state or federal law governs this issue. *See Crues v. KFC Corp.,* 729 F.2d 1145, 1148 n. 1 (8th Cir.1984).

**5.** Empire in its answer to Easley's initial complaint denied that it had employed Easley for the stated period, denied that Easley had written or that it had received a service letter request, and denied the existence of the Missouri service letter statute. In its response to Easley's amended complaint, Empire admitted her employment and its failure to respond to the service letter request but for the first time asserted that such failure was due to "inadvertent oversight" and that it was now willing to issue Easley a service

letter if she still wished. Empire argues that the district court erred in allowing those portions of the pleadings to be read into evidence. Factual assertions in pleadings, however, may be taken in evidence as admissions of parties and may be used for substantive purposes or for impeachment. *Frank v. Bloom,* 634 F.2d 1245, 1251 (10th Cir.1980). Inconsistent superseded pleadings are competent, though controvertible, evidence of facts stated therein. *Contractor Util. Sales Co. v. Certain-Teed Prods. Corp.,* 638 F.2d 1061, 1084–85 (7th Cir.1981). Given the nature of the initial answer filed by Empire, we cannot find that the district court abused its discretion in admitting the pleadings here as evidence.

Ct.App.1964) (employee's request for service letter was twice refused, though such a letter was subsequently issued). This is not a case where there is a "complete absence" of evidence to support a conclusion contrary to that urged by Empire, and we will not disturb the jury's decision to award punitive damages.

■ Finally, Empire challenges the award of punitive damages on the ground that certain passages from its employee manual that were introduced into evidence were irrelevant, inflammatory, and prejudicial. Specifically, it challenges the admissibility of those portions of the company policy stating that males generally were more qualified than females to be office managers and should be hired if possible, that preference for all jobs was to be given to applicants at least 25 years old, and that persons over 45 normally were not to be employed. The district court, having not yet directed the verdict on the service letter liability issues, accepted these passages as evidence on the "hotly contested" issue of whether Empire exercised sufficient control over Empiregas such as to constitute Easley's "employer" for purposes of section 290.140. Empire's manual, for example, does provide that any deviation from the above age policies be approved in writing by the region manager. Empire argues that these passages revealing discriminatory animus in hiring were merely cumulative of other statements in the manual evidencing Empire's control over Empiregas; however, control over personnel is the most relevant aspect of control in the service letter context, and as the district court pointed out, Empire itself injected the dis-crimination issue into the service letter count by raising it as an excuse for its delay in responding to Easley's request. The district court also stated that these passages in Empire's manual on employee qualifications were probative on the issue of malice.

A district judge has wide discretion in weighing the value of evidence against its potential for confusing and inflaming the jury, and we give great deference to this determination. *Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1244–45 (8th Cir.1983). Furthermore, we have held that the language of Rule 403 of the Federal Rules of Evidence requires that the balance generally be struck in favor of admissibility. *Id.* at 1244. We cannot find that the district court here abused its discretion in failing to exclude from evidence those portions of the Empire employee manual revealing discriminatory hiring practices.

### III.

Empire argues that the district court's finding of sex discrimination also was not supported by substantial evidence. Specifically, Empire alleges that Easley failed to make a prima facie case because she did not prove that she applied for or was qualified for the retail manager's position and that she failed to rebut the nondiscriminatory reason articulated by Empire for its refusal to promote her.[6]

As an initial matter, we reject Empire's approach at this stage. The Supreme Court has warned against excessive quibbling over the prima facie case after the defendant has proceeded with evidence of a legitimate, nondiscriminatory reason for

---

**6.** The Supreme Court held in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), that a plaintiff can establish a prima facie case of racial discrimination under Title VII by proving

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

We adapted this test to sex discrimination claims in *Banks v. Heun-Norwood*, 566 F.2d 1073, 1076 (8th Cir.1977). When the prima facie case has been made, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Finally, the plaintiff must be afforded an opportunity to show that this reason is a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

the challenged personnel decision. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *see Talley v. United States Postal Service*, 720 F.2d 505, 507 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984); *Jones v. International Paper Co.*, 720 F.2d 496, 500 (8th Cir.1983). The purpose of the prima facie case, that of airing the most common reasons why applicants are not hired, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), will have been met, and those concerns will have merged into the ultimate issue of the case—whether the applicant was treated less favorably because of sex. *Aikens*, 460 U.S. at 714–15, 103 S.Ct. at 1481–82. All the arguments of both sides will have been presented, and the district court will be in position to decide which party's explanation of the employer's motivation it believes. *Id.* at 715–16, 103 S.Ct. at 1482–83.

■ In this context Empire's argument concerning Easley's failure to submit a written application, as required by compa-

ny policy, for retail manager is without merit.[7] The district court expressly found that Easley did ask for the position on several occasions, and we do not consider this finding of fact to be clearly erroneous. *See* Fed.R.Civ.P. 52(a); *see, e.g., Pullman-Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Hoefelman v. Conservation Commission*, 718 F.2d 281, 284–85 (8th Cir.1983). The district court also credited Easley's testimony that Leikam and Kays had responded to her oral requests for promotion by stating, "You know men do not like to take orders from women." This evidence goes to the ultimate issue of discrimination.

■ Empire also argues that Easley was not "qualified" for the retail manager's position because she had a transient work history and was only an average employee whose argumentative disposition actually cost Empire customers.[8] Subjective factors, as Empire argues, are of course proper considerations in personnel decisions, but we have warned that, because of the opportunities for discriminatory abuse, the use of such criteria must be closely scrutinized, particularly when the decisions

---

7. Had it been necessary to reach the prima facie case issue, we note that formal application for a job will be excused when a known discriminatory policy, such as reflected by the statements of Leikam and Kays, deters potential jobseekers. *Banks v. Heun-Norwood*, 566 F.2d 1073, 1076 (8th Cir.1977); *cf. International Bhd. of Teamsters v. United States*, 431 U.S. 324, 363–68, 97 S.Ct. 1843, 1868–71, 52 L.Ed.2d 396 (1977) (following showing of class-wide discrimination, nonapplicant member of class is entitled to show that the discriminatory policies deterred him from applying); *Packing House & Indus. Servs. v. NLRB*, 590 F.2d 688, 696 (8th Cir.1978) (individual application not necessary where employer had already determined not to hire plaintiff because of past union membership). The plaintiff in *Banks*, as argued by Empire, was held not to have a claim for sex discrimination because she had not applied for the job. That decision, however, is distinguishable in that the district court had found that the plaintiff was deterred from applying not by the discriminatory ad but by the salary range. 566 F.2d at 1077. We expressly limited our holding in *Banks* to "the rather unique facts" of the case. *Id.* There is no evidence of a comparable independent, nondiscriminatory factor deterring written application by Easley in this case.

8. We are not sure Empire's arguments as to Easley's alleged lack of job stability and poor temperament could correctly have been characterized as going to the prima facie case anyway. Much authority holds that a plaintiff initially need only show that her qualifications fell within the general range of qualifications possessed by other persons considered for the job. The fact that the company chose another candidate as better qualified then goes to its burden of articulating a legitimate, nondiscriminatory reason for its employment decision. *See Hawkins v. Anheuser-Busch, Inc.*, 697 F.2d 810, 813–14 (8th Cir.1983); *cf. Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 724 (8th Cir.1984) (when plaintiff was physically and mentally capable of performing the job sought, employer's arguments that plaintiff was "too dominant and headstrong" and wouldn't "fit in" were taken as articulations of a nondiscriminatory reason for the employment decision in rebuttal of the prima facie case). This dispute over burdens and relative qualifications illustrates the Supreme Court's practical point in *Aikens* that the ultimate issue is whether the finder of fact may conclude that qualifications were not the real motivation for the personnel decision.

are made by the alleged favored group, here men. *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1398 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984). Leikam under questioning at trial agreed that prior experience with propane gas, familiarity with and intent to stay in the area, and sales and supervisory experience would be considerations in hiring a retail manager. The district court summarized the evidence as showing that Easley met all of these qualifications while Agofsky, the male hired instead, had only supervisory experience and had no sales experience or experience with propane gas and no ties to or familiarity with the area (except possibly through his prior job, at which he had worked only three months). Evidence indicated that Agofsky also had a transient work record. Finally, Kays testified that Leikam initially had spoken highly of Easley's performance as office manager and that Easley had been used to train new managers at other offices. The first complaints about Easley to which Kays testified concerned her failure to defer her vacation to train Agofsky and the mess the office was in when she returned—events occurring after Agofsky had already been hired.

Finally, the district court found evidence of pretext through examining Empire's general policy and practice with respect to female employment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973). For example, only nine of approximately 300 retail manager positions in the organization were held by women, and four of those had been hired after Easley's discharge. In addition, Empire's policy manual contained the following statement:

"Past experience has proven that a male Office Manager generally is better qualified to perform these required duties; and, therefore, it is recommended that a male applicant be hired if possible." The passage outlining the responsibilities of the retail manager consistently used the male gender—except when necessary to make reference to the office manager, who was denoted by the female gender.[9]

While there may have been some testimony favorable to Empire, the finding of the district court that Empire intentionally discriminated against Easley on the basis of sex in failing to give her the retail manager's job is not clearly erroneous. We have no hesitation in concluding that the conduct of Empire was in fact aggravated if not egregious; many of its arguments are clearly frivolous.

## IV.

Nevertheless, Empire argues that the district court abused its discretion in reducing only to $30,000 the attorney fee award sought by Easley as a prevailing party under 42 U.S.C. § 1988 (1982). Specifically, Empire contends that this amount is excessive in light of Easley's minimal recovery of $1,808.22 damages and that since Easley sought relief only for herself, the fee award should have been limited to approximately $900 by her 50% contingency fee agreement with counsel.

■■■ The initial step in determining a proper attorney fee award is calculation of a "lodestar" figure consisting of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40

---

9. The retail manager job description in the Empire employee manual reads in part as follows:

The primary responsibility of a Retail Company Manager is to make certain that *his* company produces a profit, and all *his* activities should be directed toward that ultimate end. * * *

     \*     \*     \*     \*     \*     \*

18. The Retail Manager is responsible for *his* Office Manager's activities. * * * *He* is also responsible for making sure that the Office

Manager handles customers properly and courteously and that *she* if [sic] familiar with the products sold by the company to a degree which will enable *her* to be conversant with customers * * *. No Office Manager should ever stay seated when serving a customer. *She* should be on *her* feet instantly when the customer enters the door and should immediately cease doing whatever *she* is doing in order to devote *her* full time and attention to the customer (emphasis added).

(1983). The district court found the appropriate figure in this case to be $61,441.25.[10] To reflect the fact that Easley, however, prevailed only on her claim of discrimination in Empire's failure to promote her and not on her claim of discriminatory discharge, the court reduced the fee award to $40,000. The Supreme Court has characterized the extent of a plaintiff's success as the "most critical factor" in adjusting fee awards, *id.* at 436, 103 S.Ct. at 1941, but has said that where claims go to common cores of facts and related legal theories, a district court is not required to mechanically apportion fees based on the number of issues on which the prevailing party was actually successful. *Id.* at 438, 103 S.Ct. at 1942. The focus should be on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. at 1940. We cannot find that the district court abused its discretion in failing to make a greater reduction for the unsuccessful claim.

The district court further reduced the fee award another $10,000, to $30,000, in light of the contingent fee agreement between Easley and her counsel but held that any greater diminution would grant a windfall to Empire by allowing it to avoid paying a reasonable attorney fee. This action by the court is consistent with our subsequent conclusion in *Sisco v. J.S. Alberici Construction Co.,* 733 F.2d 55, 57 (8th Cir.1984), that contingent fee contracts do not automatically set upper limits on fee awards. Such a rule, we held, would overemphasize the importance of damages in civil rights actions and would frustrate a congressional desire to encourage successful civil rights litigation. *Id.* This desire, we noted, was based in part on the significant benefits such litigation can produce for society at large. *Id.*

Empire, however, argues that the $30,000 fee is excessive on the facts of this

case because Easley did not seek class or injunctive relief. This contention reflects an unnecessarily restrictive view of benefit to the public. Empire attempts to distinguish the case of *Taylor v. Jones,* 653 F.2d 1193, 1206 n. 12 (8th Cir.1981), where in an individual suit we upheld a fee award nearly eight times greater than the damage award. The plaintiff in *Taylor* had prevailed on a claim of constructive discharge based on the "dismal" racial atmosphere facing employees of the Arkansas National Guard. The court ordered reinstatement but determined that an improvement in the work atmosphere, to be achieved through affirmative black hiring requirements, was necessary to make the reinstatement remedy effective. *Id.* at 1203–04. Similarly, here Easley's success in her suit should dispel the discriminatory atmosphere at Empire and discredit all the arbitrary preferences legitimized in its employee manual. There is some evidence that the litigation has already caused Empire to increase the number of female retail managers it hires. The district court expressly contemplated that Easley's suit would deter future overt, intentional discrimination by Empire, a major company—and thus a major employer and economic factor—in its part of the state. The district court's award of attorney fees was fully justified by Easley's degree of success in this case and the impact her success is likely to have on Empire's employment practices and thus on the community. We find no abuse of discretion.

The judgment of the district court is affirmed in all respects.

---

**10.** Empire also challenges the reasonableness of the number of hours expended on the case by Easley's counsel. The district court addressed the issue and found the time justified by several factors, including discovery battles. *See Jaquette v. Black Hawk County,* 710 F.2d 455, 461 (8th Cir.1983). We will not disturb this conclusion.