**SISTERS OF ST. MARY,**
Plaintiff-Appellant,

v.

**John D. BLAIR, Defendant-Respondent.**

No. 51681.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 2, 1987.

Larry B. Luber, Dennis G. Collins, Gerald M. Richardson, Bernard C. Huger, St. Louis, for plaintiff-appellant.

Mary Anne Sedey, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Following his dismissal as director of the Department of Clinical Laboratory and Anatomic Pathology of Cardinal Glennon Memorial Hospital for Children, John D. Blair, M.D., sent a request for a "service letter" stating "the nature and character of work rendered by me, the duration of such service and the reason or reasons for my termination." Blair's request was directed to Mr. Lua R. Blankenship, Executive Director of the Hospital. Except as hereinafter noted, there is no dispute that the letter meets the requirements of § 290.140, RSMo 1978,[1] which was applicable at the time the request was made.

1. Section 290.140, RSMo 1978, provides as follows:

Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment.

After Blair's request was received, this action was initiated by the Sisters of St. Mary, (hereinafter SSM), a not-for-profit corporation which operates Cardinal Glennon Hospital. In its petition, SSM sought a declaratory judgment to the effect that SSM was not required to issue a service letter to defendant Blair because he was not an "employee" of SSM. Blair responded with a general denial and counterclaimed for, inter alia, an order that he is entitled to a service letter. The trial court ruled that Blair was an employee of SSM and granted the counterclaim that Blair is entitled to a service letter. SSM appeals; we affirm.

The facts giving rise to the controversy are essentially as follows. On March 25, 1974, Dr. Blair wrote a letter to Sister Mary Helen Louise Deeken, the hospital administrator, concerning his previous visits with her in which he formally applied to become director of the hospital's department of pathology. In the letter, Dr. Blair set forth some ideas for changes in the hospital's pathology department and stated that he expected a faculty appointment, but that the question of tenure "does not matter that much since my primary interest resides at the Glennon Hospital." By letter of April 3, 1974, Sister Mary Helen Louise Deeken commented favorably on all of Dr. Blair's suggestions and concluded with, "Your addition to our well qualified medical staff would be a definite asset. We hope your decision is in the affirmative." Blair assumed his duties at the hospital as chief pathologist on September 1, 1974, although his appointment as a faculty member at St. Louis University Medical School was not confirmed until March, 1975. The appointment, however, was made retroactive to September 1974 by the medical school. After the actual appointment to the medical school faculty, Dr. Blair gave some lectures to students there; but, according to his undisputed testimony, less than five percent of his time was devoted to teaching.

SSM's principal argument that Dr. Blair was not an "employee" is based on the fact that because SSM had a contract with St. Louis University whereby the University's School of Medicine would supply to SSM's hospital a staff of duly qualified pathologists, with Dr. Blair as the director of the department, St. Louis University, not SSM, was Blair's employer. This argument is refuted by the terms of the contract itself as well as the realities of the relationship between Dr. Blair and the hospital.

At the outset we note that the contract between SSM and the university was executed on July 1, 1976, almost two years after Dr. Blair was hired by SSM. It was signed on behalf of SSM, as the operator of the hospital, by the president of the SSM governing board and on behalf of the medical school by a vice president of the St. Louis University Medical Center. The contract recites that the hospital has a pathology department and that the purpose of the contract is to staff the department with duly qualified and licensed pathologists. The contract also states that the hospital pathologists must have faculty appointments and that the school will examine their credentials and give them such appointments if they are qualified. The hospital, however, reserved the right to accept or reject candidates for director of the pathology department and all other members of the department's professional staff. Only the hospital, under the terms of the contract, was authorized to negotiate with the pathologists the terms of their compensation, and the pathologists were to "be accountable to the chief executive officer of the Hospital or her designee for all matters pertaining to the operation of ..." the pathology department. Although the medical school agreed to be responsible for providing professional liability insurance for the pathologists in the performance of their duties at the hospital, the hospital agreed to reimburse the medical school for the salaries of the pathologists plus twelve and one-half percent of the gross salaries to cover other fringe benefits such as workers' compensation and disability insurance. The pathologists' paychecks were issued by St. Louis University in the amounts directed by the hospital. Although the term of the contract was for one year commencing July 1, 1976, it spe-

cifically provided for renewal and amendment by mutual agreement. It also contained a provision to the effect that it could be terminated at any time by either party upon ninety days notice given to the other party.

The contract was renewed annually through 1980; but, on December 19 of that year, the president of the SSM governing board notified the medical school that SSM was exercising its termination rights and that, as of March 19, 1981, the contract was terminated. A copy of the notification was sent to defendant Blair, who responded with a letter to the SSM president protesting the termination. The executive director of the hospital answered with a letter to Blair which stated, in part:

> The termination of the Agreement with St. Louis University through which you served as Director of the Department necessitates replacing you in that position. Therefore, as of March 20, 1981 your appointment as Director of the Department of Pathology will terminate. Likewise on that date you will no longer be Director of the Section of Anatomic Pathology.

Dr. Blair's request for a service letter and this lawsuit followed.

During his six and one-half years at the hospital, Dr. Blair received several pay raises. These were always negotiated by Blair with members of the hospital's administrative staff, never with representatives of the medical school. Whenever Blair or any other pathologist was granted an increase in compensation by the hospital, this information was given by the hospital to the medical school and the hospital increased its payments to the medical school accordingly. The medical school exercised no supervisory control over Blair's operation of the pathology department, but he met regularly with members of the hospital administration on matters pertaining to the department.

In view of the foregoing, we cannot hold that the trial court erred in finding that Blair was an "employee" of SSM and, therefore, entitled to a "service letter" as provided for by § 290.140, RSMo 1978.

The focus of all of SSM's arguments that the trial court erred in finding that Dr. Blair was an employee of the hospital is that he was an independent contractor, not under the "control" of the hospital. To support this contention SSM points to the highly skilled nature of his work, the fact that SSM had the contract with St. Louis University whereby the medical school would supply the hospital with all of its pathologists, and the fact that the hospital had no power to control "the details" of Blair's work.

■ Recognizing that the service letter statute is penal in nature and that it is to be construed in favor of the employer, *Horstman v. General Electric Company*, 438 S.W.2d 18, 20 (Mo.App.1969), we decline to apply that principle so as to ignore the obvious statutory intent: that a discharged employee is entitled, upon proper request, to be notified in writing of the nature, character, and duration of his service, as well as the reason for his termination. Construing another penal statute on a related subject (unpaid wages due a discharged employee, § 290.110, RSMo 1978), the court said, "[T]he primary purpose of all statutory construction is to ascertain the intent of the legislature, and the rule of strict construction does not require such a strained or narrow interpretation of the language as to defeat that intent." *Cook v. Burke*, 693 S.W.2d 857, 861 (Mo.App.1985).

■ As to whether the trial court correctly held that Blair was an "employee" of SSM's hospital or St. Louis University, we note that he was interviewed and hired by SSM some two years before the contract was entered into, that the contract provided that all of the pathologists would "be accountable" to the hospital, that the hospital would set Blair's and the other pathologists' compensation, and that the hospital could terminate Blair by terminating the contract. All of these factors involve "personnel matters." Although no court of this state has determined the exact ingredients of the employer-employee relationship for purposes of § 290.140, the United States Court of Appeals, Eighth Circuit, considered

the question in *Easley v. Empire Incorporated,* 757 F.2d 923 (1985). In that case, the court said that the purpose of the statute (explication of the true quality of the employee's service and reason for his discharge) "implicates the entity having control over personnel matters." *Id.* at 926. Here, that entity is SSM.

We accord no weight to SSM's argument that, because of the high level of professional skill required by Blair's duties as director of pathology, it had no "control" over him and he could not therefore be an "employee". The same delusive argument could be made with respect to any professional, e.g. a lawyer employed as house counsel by a corporation, or, indeed, with respect to any skilled craftsman who knew more about the intricacies of his duties than did his employer.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., and SIMON, J., concur.

