Jacquelyn HAWKINS, Appellee,

v.

ANHEUSER–BUSCH, INC., Appellant.

Jacquelyn HAWKINS, Appellant,

v.

ANHEUSER–BUSCH, INC., Appellee.

Nos. 81–1153, 81–1993.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1982.

Decided Jan. 10, 1983.

See also, D.C., 504 F.Supp. 882.

HEANEY, Circuit Judge.

Jacquelyn Hawkins, a former employee of Anheuser-Busch, Inc., commenced an action in the United States District Court for the Eastern District of Missouri, alleging that the company had refused to promote her on three separate occasions because of her sex and on one of those occasions for the additional reason that she had filed a charge of discrimination with the Equal Employment Opportunity Commission. The district court, 522 F.Supp. 159, found that the company had refused to promote her to one position—the position of material control analyst—because of her sex, but found that she had not been otherwise discriminated against. It awarded her back pay in the sum of $1,461, prejudgment interest in the sum of $98.55, and attorneys' fees in the sum of $4,600. Hawkins appeals. She contends that the district court erred (1) in finding in favor of the company with respect to her other discrimination claims; (2) in computing the back pay to which she is entitled; (3) in awarding inadequate attorneys' fees; and (4) in failing to award certain costs. Anheuser-Busch, Inc., filed a cross-appeal. It contends that the district court erred (1) in finding for Hawkins with respect to the material control analyst position; and (2) in awarding Hawkins attorneys' fees. We affirm the district court's judgment with respect to the discrimination claims, increase the back pay award, allow the disputed costs, and remand for the purpose of recomputing attorneys' fees.

## I.

## BACKGROUND

Hawkins was initially employed by Anheuser-Busch on February 15, 1967, as a junior secretary (grade 4). Her duties were primarily clerical. In April of 1971, after a maternity leave, she was rehired as a junior secretary in the Operations Material Control Department.

In February, 1975, a Trade Returns Section was established in the Operations Ma-

Mary Anne Sedey, Chackes & Hoare, St. Louis, Mo., for appellant/cross-appellee.

Donald L. McCullin, Wilson, Smith & McCullin, St. Louis, Mo., for appellee/cross-appellant.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

terial Control Department and the position of supervisor of trade returns was created. Hawkins was classified as an accounting clerk in the new section. John T. Mulrooney was named supervisor of the department.

In April, 1978, Mulrooney was transferred to another department in the company. Hawkins, who had continued to be classified as accounting clerk I (grade 9), asked to be appointed to the vacant supervisor position. Her request was denied on the grounds that she lacked a college education and computer programming experience. The position was filled by Thomas Forbes, a white male with a college education and some computer programming experience. Hawkins filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The Commission gave Hawkins a notice of a right to sue. She commenced an action in district court on March 21, 1979, alleging that she had been denied the promotion because of her sex.

In early 1979, the Trade Returns Section was reorganized. Under the reorganization, the position of material control analyst (grade 14) was created. The position of accounting clerk I was retained, but the duties of the position were changed to delete many of the duties relating to forecasting, budgeting and movement orders, and to add substantial typing and filing tasks. Hawkins applied for the material control analyst position. She did not receive the job. It was given to Mark Rogan, a white male.

In June of 1979, trade returns supervisor Forbes was transferred to a new position within the company. Again, Hawkins applied for the supervisor position, and again she was denied the promotion. The job was given to Thomas Sanders, a white male with a B.S. degree in management science.

On October 18, 1979, Hawkins filed a second charge with the EEOC. She contended that she had been denied the material control analyst and supervisor of trade returns positions because of her sex and in retaliation for filing the initial discrimination charge. After receiving another notice of a right to sue, Hawkins filed an amended complaint on June 9, 1980, in which she repeated the allegations of the first complaint and additionally alleged that she had been denied the material control analyst and trade returns supervisor positions because of her sex. A four day trial on the merits was commenced on September 15, 1980. The trial court found in favor of Hawkins with respect to the material control analyst position and against her with respect to the trade returns supervisor position and on her retaliation claim. Hawkins and Anheuser-Busch both appeal.

## II.

### ISSUES

#### A. *The Material Control Analyst Position.*

◼ Hawkins has pursued her claim that she was discriminatorily denied the material control analyst position under a disparate treatment theory. To establish a prima facie case of sex discrimination under this theory, the plaintiff must show that (1) she belongs to a protected class, (2) she applied for a job for which she was qualified, (3) despite her qualifications, she was rejected, and (4) thereafter, the position remained open and the employer continued to seek applicants with qualifications similar to those of the plaintiff. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The district court, applying this analysis, held that Hawkins established her prima facie case.[1]

1. Anheuser-Busch does not, and indeed could not, contend that the district court applied an improper legal theory in determining whether Hawkins established a prima facie case. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1094 & n. 6, 67 L.Ed.2d 207 (1981) (concluding that *McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) continues to state the elements of a *prima facie* disparate treatment case). Hawkins did not contend at trial and does not contend here that the requirements for the material control analyst position had a disparate impact on women applicants.

Anheuser-Busch contends that the district court erred in so holding because Hawkins was not qualified to assume the material control analyst position. Specifically, the company contends that it required applicants for the position to have two years of college with an emphasis in inventory and production control, and that Hawkins did not possess this qualification.

Hawkins does not have two years of college education. Nonetheless, the district court found that she was qualified for the material control analyst position on the basis of her previous work experience at Anheuser-Busch. It stated:

> During the seven years plaintiff worked in the trade returns section, she gained experience in the inventory planning, allocation, and short-term forecasting functions assigned to the newly-created material control analyst position.
>
>     *     *     *     *     *     *
>
> Plaintiff * * * established a prima facie case concerning her application for the position of material control analyst. * * * [She] applied and was qualified for the position of material control analyst based upon her seven years experience in trade returns. After * * * [she] was rejected for the position * * *, [Anheuser-Busch] continued to seek applications from persons with similar qualifications, e.g., trained to perform functions which had, in substantial part, previously been performed by plaintiff. (Citation omitted.)

The district court's finding that Hawkins was qualified for the material control analyst position is fully supported by the record.

First, the two year college requirement was not an absolute one. When Anheuser-Busch advertised the position in the local newspapers, it did not list any minimum education qualifications, it listed only experience requirements.

Second, the company interviewed Hawkins notwithstanding the alleged educational deficiency.

Third, the white male eventually hired to fill the position did not possess all the educational qualifications that the company professed to require. Although he had taken a few materials management and business courses in college, his two year associate degree was in liberal arts. The company explicitly required "two years of college *with an emphasis in inventory and production control.*" (Emphasis added.)

Apart from the question of whether Anheuser-Busch actually established the education requirement for the material control analyst position, Hawkins plainly proved that she was "qualified" for the job. In her years with Anheuser-Busch, Hawkins performed substantially all of the duties that the company assigned to the material control analyst position. Hawkins' supervisors rated her job performance as satisfactory or better. Three supervisors testifying at trial said that she was a good employee who did her work well and who possessed good communications skills. Although some Anheuser-Busch witnesses raised a few "nitpicking" criticisms regarding Hawkins' performance, the district court plainly did not err in rejecting them and concluding that her past experience with the company qualified her for the material control analyst job.

■ Anheuser-Busch alternatively contends that Hawkins failed to establish her prima facie case because she failed to prove that the position was offered to a less qualified male, and because in fact it hired a better qualified candidate, Mark Rogan. The defendant's argument is misplaced. The plaintiff need not prove her relative qualifications to meet her prima facie burden. *Aikens v. United States Postal Service Board of Governors,* 665 F.2d 1057, 1059 (D.C.Cir.1981), *cert. granted,* 455 U.S. 1015, 102 S.Ct. 1707, 72 L.Ed.2d 132 (1982); *Lynn v. Regents of the University of California,* 656 F.2d 1337, 1342–1345 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982). *Contra Holder v. Old Ben Coal Co.,* 618 F.2d 1198, 1201–1202 (7th Cir.1980).

To require such proof of relative qualifications at the prima facie stage of a case would undermine the *McDonnell Douglas*

Corp. v. Green, supra, framework and "collapse [its] three step analysis into a single initial step at which all issues would be resolved." *Lynn v. Regents of University of California, supra,* 656 F.2d at 1344; Note, *Relative Qualifications and the Prima Facie Case in Title VII Litigation,* 82 Colum.L.Rev. 533, 561 (1982). Such a steep prima facie threshold is contrary to the legislative intent of Title VII and could "block individual claims, undercut the deterrent effects of Title VII, and work against the attainment of equal opportunity in all areas and at all levels of employment." Note, *Relative Qualifications and the Prima Facie Case in Title VII Litigation, supra,* 82 Colum.L.Rev. at 573. *Accord* Bartholet, *Proof of Discriminatory Intent Under Title VII: United States Postal Service Board of Governors v. Aikens,* 70 Calif.L.Rev. 1201, 1210–1220 (1982).

Accordingly, the defendant's claim that it rejected Hawkins because Rogan was more qualified must be treated as a nondiscriminatory reason for its action that it articulated in response to the plaintiff's prima facie case. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–256, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207 (1981). Under *Burdine,* of course, the company's burden is only to articulate such a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 254–255, 101 S.Ct. at 1094. The plaintiff retains the ultimate burden of persuading the trier of fact that the employer acted for a discriminatory reason. *Id.* at 255–256, 101 S.Ct. at 1094–1095.

■ Anheuser-Busch met its burden by introducing evidence, through the testimony of its officials, that it filled the material control analyst position with Rogan rather than Hawkins because he was more qualified. Nonetheless, we agree with the district court's finding that Hawkins proved that this articulated rationale was a pretext and that she was in fact not given the position because of her sex.

Hawkins clearly proved that she was at least as qualified for the material control

analyst position as the person who received the job—Rogan. The company emphasizes that Rogan had approximately five and one-half years of work experience in inventory control, and scheduling and forecasting at Emerson Electric and Hussmann Refrigeration before coming to Anheuser-Busch. Hawkins, however, established that she had worked for Anheuser-Busch for *seven years,* satisfactorily performing substantially the same duties that were included in the material analyst position.

Rogan did have two years of college, including a handful of materials management courses, in addition to his work experience. His degree, however, was in liberal arts. Rogan also had been a member of a materials management society for some two years. These qualifications, while not unimportant, are no more persuasive than those of Hawkins since she had successfully performed the duties of the material control analyst for several years at Anheuser-Busch itself.

In the final analysis, Anheuser-Busch's arguments come down to the claim that it is free to reorganize its departments, to create new employment positions, to establish the education requirements for those jobs, and then to fill them with whomever it pleases. The short answer to this claim is that although the company has the right to reorganize its operating structure and employment classifications, it is not free to exercise that right in a manner that prevents a qualified member of a protected class from retaining a position that he or she was previously performing satisfactorily. Here, Anheuser-Busch acted lawfully in establishing the material control analyst position and in setting the requirements for the job. It acted unlawfully, however, in denying the plaintiff this position because she did not have two years of college when she had proved—by satisfactorily performing the material control analyst's duties over a period of years—that she could do the job. To hold otherwise would deprive members of protected classes of jobs that they had obtained through years of satisfactory service.

We hold that Hawkins met her burden of proving that Anheuser-Busch's claim that it denied her the material control analyst position because Rogan was more qualified was a pretext for discrimination. Accordingly, we affirm the district court's finding that the defendant violated Title VII by denying Hawkins that job.[2]

### B. *Supervisor of Trade Returns.*

Hawkins relies on a disparate impact theory to support her claim that she was discriminatorily denied the trade returns supervisor position. Specifically, Hawkins contends that the requirement that applicants for the trade returns supervisor position have a college degree in business, industrial engineering, materials management, or a related field had a disparate impact on women.

■ To establish a prima facie case under the disparate impact theory, the plaintiff need not show that the employer had a discriminatory intent; she need only demonstrate that a facially neutral employment practice actually operates to exclude from a job a disproportionate number of members of a protected class. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *Kirby v. Colony Furniture Co., Inc.,* 613 F.2d 696, 703 (8th Cir. 1980); *Donnell v. General Motors Corp.,* 576 F.2d 1292, 1296 (8th Cir.1978). The district court in substance found that Hawkins established her prima facie case, stating that the "college degree requirements * * * operate to exclude women from eligibility for the [trade returns supervisor] position because women hold these degrees in substantially smaller percentages than their percentage in the population."

Assuming, without deciding, that Hawkins established her prima facie case, the burden of persuasion shifted to the defendant to prove that the college degree requirement was justified by business necessity. *Dothard v. Rawlinson,* 433 U.S. 321, 97

S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 408, 95 S.Ct. 2362, 2367, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co., supra,* 401 U.S. at 424, 91 S.Ct. at 849; *Green v. Missouri Pacific Railroad Co.,* 523 F.2d 1290, 1295–1296 (8th Cir.1975). To establish the business necessity defense, Anheuser-Busch carries a heavy burden. It must demonstrate that the college degree requirement had "a manifest relationship to the employment in question." *Dothard v. Rawlinson, supra,* 433 U.S. at 329, 97 S.Ct. at 2727. A discriminatory employment practice cannot be "justified by routine business considerations;" the employer must demonstrate that there is a *"compelling need * * * to maintain that practice." Kirby v. Colony Furniture Co., Inc., supra,* 613 F.2d at 706 n. 6. (Emphasis in original.)

The district court held that Anheuser-Busch established that its college degree requirement was justified by business necessity. While this Court might have reached a contrary result had it been the fact-finder, we cannot say that the district court's decision was a clearly erroneous one.

■ An employer cannot rely on purely conclusory testimony by company personnel to prove that a college degree is job-related and required by business necessity. *See Payne v. Travenol Laboratories, Inc.,* 416 F.Supp. 248, 259–260 (N.D.Miss.1976), *aff'd,* 565 F.2d 895 (5th Cir.), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). Although Anheuser-Busch presented such testimony here, it did not rely exclusively on it. Its witnesses testified at length concerning the reasons why the college degree requirement was job-related and justified by business necessity.

A validation study would have strengthened the company's case. It is the preferred type of evidence in a disparate impact case. *See, e.g.,* Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. §§ 1607.1 *et seq.;* Bartholet, *Application of*

---

**2.** Hawkins also contended in the court below that Anheuser-Busch violated Title VII by changing her duties when the material control analyst position was created in 1978 in retaliation for her lawsuit against the company. The district court found against Hawkins on this claim. This finding was not erroneous.

*Title VII to Jobs in High Places,* 95 Harv.L. Rev. 945, 989–990 (1982). We cannot say, however, that validation studies are always required, and we are not willing to hold under the facts of this case that such evidence was required here.

Once the employer met its burden of demonstrating that the educational requirement was justified by business necessity, the plaintiff then had to show that another employment practice, which did not produce a similar discriminatory impact, would satisfy "the employer's legitimate interest in 'efficient and trustworthy workmanship.'" *Albermarle Paper Co. v. Moody, supra,* 422 U.S. at 425, 95 S.Ct. at 2375, *quoting McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 801, 93 S.Ct. at 1823; *Kirby v. Colony Furniture Co., Inc., supra,* 613 F.2d at 703. When the employer is shown an alternative selection method that has substantial validity and less adverse impact, it must choose the less discriminatory method. *See id.;* Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607.3(B).

■ Here, Hawkins contended that her experience performing all or substantially all of the duties of the trade returns supervisor was an adequate alternative to the college degree requirement. We agree that such on-the-job experience with the company, if proven, would be a less-discriminatory alternative to the degree requirement, and that Anheuser-Busch would have had to recognize this selection method if it was available. The district court, however, found, that unlike the material analyst position, Hawkins had not performed all, or even substantially all, of the duties of the trade returns supervisor during her tenure with Anheuser-Busch.

Although Hawkins testified that she in fact had performed all such duties, the company's witnesses testified that the supervisory functions performed by the plaintiff were at the direction and under the supervision of her superiors. They further testified that Hawkins did not make supervisory decisions, but rather executed the decisions made by her superiors. In light of this contradictory testimony, we cannot say, after carefully reviewing the record as a whole, that the district court erred in concluding that Hawkins had not been performing the principal duties of the trade returns supervisor prior to the time she was rejected for that position. Since Hawkins advanced no other selection criteria than her own previous experience, she has not shown that Anheuser-Busch had available an alternative selection method that was valid and less discriminatory than its degree requirement. Accordingly, we hold that the district court did not err in finding against Hawkins on her trade returns supervisor claim.

C. *The Back Pay Award.*

■ The district court did not abuse its discretion in awarding Hawkins back pay. It did err, however, in computing the back pay to which she was entitled. There is no evidence in the record to support its use of the Federal Civil Service System for computing a new level of pay when a federal employee is promoted and the pay grades overlap.

The court had before it the company's job classification scheme which provided for the salary ranges in grades 9 and 14 as follows:

| | Year | Minimum | Median | Maximum |
|---------|------|-----------|-----------|-----------|
| Grade 9 | 1979 | $ 935/mo. | $1180/mo. | $1425/mo. |
| | 1980 | $ 935/mo. | $1230/mo. | $1525/mo. |
| Grade 14 | 1979 | $1285/mo. | $1657/mo. | $2030/mo. |
| | 1980 | $1285/mo. | $1727/mo. | $2170/mo. |

The back pay period runs from April, 1979, through February, 1980. Hawkins was paid $1,230 per month for the months of April and May, 1979, and $1,350 per month for the nine month period June through February, 1980. Absent other evidence, it is reasonable to infer that at a minimum Hawkins would have been placed on the lowest step in grade 14 which would have given her a pay increase. Thus, her salary should have been $1,285 for the months of April and May of 1979, and $1,727 per month for the nine months in 1980. On remand, the district court shall compute the back pay award to which Hawkins is entitled pursuant to the monthly

salary set forth above and shall recompute prejudgment interest on the amount awarded.

### D. Attorneys' Fees.

The district court did not abuse its discretion in awarding attorneys' fees to Hawkins' counsel. It did err, however, in determining the amount of the fee. The plaintiff requested a fee based on 185 hours of work at the rate of $40 per hour, or $11,000, plus an allowance of $1,034 for the services of a law student working under her direction. Anheuser-Busch did not object in the court below or on appeal to counsel's hourly rate or to the reasonableness of the hours incurred. Moreover, the record affirmatively shows that the hourly rate and hours worked were reasonable.

Anheuser-Busch raised only two objections below and again here. First, it contends that a fee for paralegal services should not be allowed. We find no merit to this contention. Paralegal fees should be allowed if reasonable and not duplicative of other legal fees. See Spray-rite Service Corp. v. Monsanto Co., 684 F.2d 1226, 1250 (7th Cir.1982); Pacific Coast Agricultural Export Assn. v. Sunkist Growers, Inc., 526 F.2d 1196, 1210 n. 19 (9th Cir.1975), cert. denied, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976). Contra City of Detroit v. Grinnell Corp., 495 F.2d 448, 473 (2nd Cir.1974). Second, the company urges that the attorneys' fee should be reduced because the plaintiff did not prevail on all issues. The district court, citing Brown v. Bathke, 588 F.2d 634 (8th Cir.1978), disclaimed any intent to reduce the fee because plaintiff did not prevail on all issues. It stated:

> Defendant argues that attorney's fees should be awarded only for successful efforts by counsel on plaintiff's behalf. The Eighth Circuit has addressed this position in Brown v. Bathke, 588 F.2d 634 (8th Cir.1978), disapproving the award of attorney's fees for only the successful portions of the causes of action, when the district court attempted to mechanically divide the hours between time spent on

the successful portion and time spent on the unsuccessful portion of the suit. Such a division rarely can be made, and would be very difficult in the present case.

Notwithstanding the foregoing conclusion, the district court reduced plaintiff's attorneys' fee and gave no reason for doing so. The only inference that we can draw is that the district court, despite its disclaimer, reduced the fee because the plaintiff did not prevail on all issues.

Under the circumstances, we remand to the district court to promptly award plaintiff's counsel $5,634, the sum awarded by the district court, plus the requested allowance for paralegals. We further direct the district court to hold the question of whether additional attorneys' fees should be awarded until the Supreme Court has decided Hensley v. Eckhart, 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982), in which the questions of whether and to what extent attorneys' fees may be reduced because a plaintiff does not recover on all issues hopefully will be answered. See Paxton v. Union National Bank, No. 81–1650 (8th Cir. Dec. 6, 1982).

### E. Costs.

The district court refused to award statutory costs of $136.84. This refusal was erroneous. See Alexander v. National Farmers Organization, 696 F.2d 1210 (8th Cir.1982); Jones v. Diamond, 636 F.2d 1364 (5th Cir.) (en banc), cert. dismissed, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). These costs will be awarded on remand.

### F. Costs on Appeal.

Costs for this appeal will be taxed two-thirds to Anheuser-Busch and one-third to Hawkins. Hawkins may submit a request for attorneys' fees on appeal within thirty days of the date that the Supreme Court releases its decision in Hensley v. Eckhart, supra.

III.

CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.