779 F.2d 51
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ETHELENE LUJAN, Plaintiff-Appellant,
vs.
FRANKLIN COUNTY BOARD OF EDUCATION, et al. Defendants-Appellees.
 84-5949
 United States Court of Appeals, Sixth Circuit.
 10/29/85
 
 REVERSED AND REMANDED
 E.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: MARTIN and CONTIE, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ethelene Lujan appeals the district court's judgment in favor of the defendants, the Franklin County Board of Education and Fred Langford, the Superintendent of Schools of Franklin County, Tennessee. Lujan claims that the Board of Education's failure to hire her as a librarian at South Junior High School violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. Lujan also alleges that the defendants retaliated against her because her husband, Joe Lujan, had previously filed an employment discrimination action against the defendants. For the reasons stated below, we remand the case for further consideration.
 
 
 2
 Ethelene Lujan, who is of black parentage, was first employed by the Board of Education in 1947 at Townsend High School, an all black school. When she was initially employed, Lujan had a bachelor's degree with a major in elementary education and a minor in library science. In 1967, Lujan received a master's degree in education. She also has received over thirty hours of additional courses in library science and has been certified in the area of library science by the State of Tennessee for grades kindergarten through twelve. Although there is a dispute as to whether Lujan was ?? formally appointed as a librarian at Townsend, it is undisputed that she worked in the Townsend library from 1962 until the school closed in 1966.
 
 
 3
 Litigation resulting in desegregation, which began in the early 1960's, led to the closing of Townsend High School. See Hill v. Franklin County Board of Education, 232 F. Supp. 671 (E.D. Tenn. 1964). Following the closing, Lujan was transferred to Cowan Public School, which contains fourth, fifth and sixth grade students. Lujan was officially classified as a classroom teacher, but she also served unofficially as the librarian at Cowan.
 
 
 4
 In 1982, a librarian's position opened at South Junior High School. Lujan and two other individuals, Gail Watson and Lois Cunningham, applied for the job. Watson and Cunningham are both white.
 
 
 5
 Watson has a bachelor's degree in English, a master's degree in librarianship and a master's degree in education. Watson had been employed by the Board of Education as an English teacher since 1977. Before her employment with the Board, she had worked for three years as a librarian in South Carolina. Watson is a member of several professional librarian associations. Upon review of the three applications, Superintendent Langford recommended to the Board of Education that Watson be hired. The Board followed this recommendation and hired Watson. At trial, the Board contended that it hired Watson because she had a master's degree in librarianship.
 
 
 6
 Lujan's charge of racial discrimination is based on the ?? decision to hire Watson over Lujan. Lujan's retaliation ?? is premised on her husband's 1979 charge against the Board of ?? of racial discrimination. Lujan alleges that after her husband filed the action, she did not receive new textbooks for classes in which other teachers had received new textbooks, she was not invited to an annual faculty luncheon and Cowan's principal began to communicate with her through an intermediary rather than directly contacting her.
 
 
 7
 The district court dismissed Lujan's complaint after presentation of the evidence. The court held that on the basis of academic credentials, Watson was better qualified for the position and that as a result Lujan had not made a prima facie case of racial discrimination under Title VII. The court also held that there was no evidence of racial discrimination in the selection of Watson for the librarian position.
 
 
 8
 In her appeal from the district court's decision, Lujan raises several arguments which have been foreclosed by this court's recent decision in the racial discrimination action brought by her husband, Lujan v. Franklin County Board of Education, 766 F.2d 917 (6th Cir. 1985). Specifically, Lujan claims that she was entitled as a matter of right to the librarian's position due to her alleged demotion following desegregation, relying on Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969) (en banc), rev'd in part on other grounds, sub nom., Carter v. West Feliciana Parish School Board, 396 U.S. 1032 (1970). Lujan also argues that under the principles stated in Rolfe v. County Board of Education, 391 F.2d 77, 80 (6th Cir. 1968), the burden of persuasion ?? this case should have been placed on the Board of Education to ?? that the employment decision was not motivated by racial considerations. See also, McFerren v. County Board of Education, 455 F.2d 199, 201 (6th Cir.), cert. denied, 407 U.S. 934 (1972); Chambers v. Hendersonville City Board of Education, 364 F.2d 189, 192 (4th Cir. 1966) (en banc).
 
 
 9
 As to Lujan's claim under Singleton, this court need not decide whether the Board of Education was required to give preference to Lujan as displaced or demoted personnel. In Lujan I, this court held that 'even if the Board had a Singleton duty to give preferences to displaced personnel, a violation of that duty may not be remedied in litigation brought solely under Title VII [of the Civil Rights Act of 1964].' Lujan, 766 F.2d at 923. In so holding, the court distinguished between the preferential treatment given to a particular class of persons under Singleton and the more limited protections provided under Title VII. The court stated:
 
 
 10
 While a person might have a right to recall under a Singleton injunction and also have a right to relief under Title VII, he does not obtain the latter by virtue of the former. Rather, a plaintiff must prove that he was a victim of discrimination in order to assert a right to relief under Title VII.
 
 
 11
 Id. at 924 (emphasis in original). Lujan's claim in the present case arises solely under Title VII. Accordingly, Lujan cannot successfully assert a Singleton claim, but instead must prove actual discrimination.
 
 
 12
 Lujan's burden of proof issue is also resolved by Lujan I. This court decided in Jujan I that the only situations in which a Title VII plaintiff may shift the burden of persuasion to the ?? is when significant numerical disparities are established, ?? in a pattern or practice case or a disparate impact case. Id. at ??. The court recognized that 'if a facially neutral employment ?? . . . has a disproportionate impact on minorities, the ?? of persuasion shifts to the defendant to show that the ?? has a 'manifest relationship to the employment in question." Id. at 928, quoting, Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971). Also, the court noted that in 'pattern or practice' cases when a plaintiff proves that racial discrimination is standard operating procedure, 'the burden of proof shifts to the defendant to show that in individual cases the hiring decision was not due to the discriminatory policy but to some other, legitimate consideration.' Lujan, 766 F.2d at 928-29; see International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977). Only under these circumstances is shifting the burden of persuasion to the defendant appropriate. On the other hand, when a claim is based on a single occurrence of discrimination, the general rule of Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1980), applies and the burden of persuasion remains at all times with the plaintiff. Id. at 253.
 
 
 13
 The issue of whether Lujan submitted evidence which would support a claim in the nature of a disparate impact or pattern or practice claim is a factual determination. We note that in making this analysis, 'numerical disparity is the key' to shifting the burden under either a disparate impact or pattern or practice case. Lujan, 766 F.2d at 929. Without evidence of numerical disparity, such as evidence that the faculty and staff employed by the Board of Education has disproportionately low numbers of minorities, the claim is treated as one of disparate treatment and the only relevant question is whether the plaintiff has proved intentional racial discrimination on an individual basis. Id. at 929; see generally, Cooper v. Federal Reserve Bank of Richmond, 104 S. Ct. 2794, 2799-802 (1984) (where class action is unsuccessful in showing pattern or practice claim, member of class not precluded from later asserting disparate treatment claim with burden of persuasion governed by Burdine).
 
 
 14
 In the present case, there is insufficient evidence of numerical disparity to warrant a shifting of the burden of persuasion. Superintendent Langford did testify that of eight librarians in Franklin County, only one is black. However, Langford also testified that the black enrollment in Franklin County is approximately eight percent of the total student population, so the number of black librarians is not disproportionate to the number of black students in Franklin County. Also, there is no evidence that the Board of Education has rejected large numbers of minority applicants for library positions. Under these circumstances, the court finds that Lujan has failed to provide sufficient proof of disparity to shift the burden of proof to the Board of Education. Accordingly, we reject Lujan's argument based on Rolfe.
 
 
 15
 We now examine whether the district court properly applied the principles governing a Title VII disparate treatment case. We conclude that it did not. The Supreme Court set forth the basic framework applicable to a Title VII case alleging disparate treatment in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas a plaintiff first has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff succeeds in establishing a prima facie case, the defendant must then 'articulate some legitimate nondiscriminatory reason for the employee's rejection.' Id. at 802. In McDonnell Douglas, the Supreme Court set forth an example of a prima facie case of racial discrimination. Under that model a plaintiff must show:
 
 
 16
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 17
 Id. This method for establishing a prima facie case was "never intended to be rigid, mechanized, or ritualistic." United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1982); quoting, Furnco Construction Corp. v. Waters, 438 U. S. 567, 577 (1978). Also, the 'burden of establishing a prima facie case of disparate treatment is not onerous.' Burdine, 450 U.S. at 253.
 
 
 18
 The district court, after conducting a full bench trial, stated that '[b]ecause Mrs. Watson was better qualified, it cannot be said that Mrs. Lujan has made a prima facie case of race discrimination under Title VII guidelines.' This conclusion is incorrect as a matter of law. A plaintiff in a Title VII disparate treatment case need not show she is the best qualified to make out a prima facie case. See, e.g., Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810, 813-14 (8th Cir. 1983). Lujan made out a prima facie case because evidence submitted showed that she belonged to a racial minority, that she applied and was qualified for the librarian position, that she was rejected and that a white person was hired instead. The district court's conclusion that she had not made out a prima facie case was therefore in error. We recognize that the district court made factual findings on the 'ultimate question' in a disparate treatment case, '[whether] the defendant intentionally discriminated against the plaintiff,' Burdine, 450 U.S. at 253, but we cannot affirm the judgment of the court due to the incorrect statement regarding Lujan's prima facie case. Accordingly, we remand the case for the district court to make new findings regarding Lujan's disparate treatment claim.
 
 
 19
 We also remand for another reason. Lujan raised a claim of retaliation based on her husband's previous racial discrimination action. The district court, however, did not address this claim. We remand the case for the district court to make findings on this issue as well. In analyzing the case on remand, we note that in order to violate Title VII, harassment on the job 'must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.' See Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982). While a pervasive atmosphere of harassment on the job, such as repeated racial slurs, would violate Title VII, 'occasional or sporadic instances of such conduct does not.' See Torres v. County of Oakland, 758 F.2d 147, 152 (6th Cir. 1985).
 
 
 20
 For the reasons stated above, we REVERSE the judgment of the district court and REMAND for new findings on the disparate treatment claim and for determination of the validity of the retaliation claim.