Carolyn **HOLLOWAY**, Plaintiff,

v.

**PROFESSIONAL CARE CENTERS HERITAGE PARK, INC.,**
Defendant.

No. 84–2192 C (5).

United States District Court,
E.D. Missouri.

Oct. 15, 1986.

Richard L. Turner, Ron C. Gladney, St. Louis, Mo., for plaintiff.

Robert W. Stewart, Timothy A. Garnett, St. Louis, Mo., for defendant.

**MEMORANDUM**

LIMBAUGH, District Judge.

This matter is before the Court on the defendant's motion for a directed verdict which the Court has taken with the case. This cause is based on alleged violations of

---

**5.** *See,* Order of October 3, 1986.

42 U.S.C. § 1981 and § 2000e *et seq.* Jurisdiction is based on 42 U.S.C. § 2000e–5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343(4).

Plaintiff's cause of action arises out of her former employer's failure to promote her during the time she worked in a Rolla nursing home owned by the defendant. The plaintiff is a black woman and alleges that the defendant's selection of three white women to fill positions the plaintiff was seeking was a racially motivated decision denying her advancement to a position which she was qualified to hold.

## Findings of Fact

Plaintiff, a Missouri citizen, was employed as a certified nurse's aide in Rolla, Missouri with the defendant's legal predecessor from September of 1981 through most of the period up to December of 1982. She is a high school graduate with a solid work record and certification in the State of Missouri as both a nurse's aide and a medication technician. The defendant, Professional Care Centers, Heritage Park, Inc., is a Missouri corporation succeeding Medigroup Professional Care which was plaintiff's former employer.

The plaintiff began her employment with the defendant certified only as a nurse's aide. The evidence indicates that her performance in this capacity was good and that she received generally praiseworthy evaluations from her supervisors. In early 1982, defendant selected three certified nurse's aides (CNAs), including plaintiff, to participate in a certified medication technologist (CMT) training program. One of the other CNAs and plaintiff completed the training in June of 1982. The plaintiff, in fact, ranked in the top one-half of her CMT training class.

After her certification as a medication technician, plaintiff made it known to her employer that she desired to work in that capacity as soon as a CMT position became available. Despite her new credentials, she continued to work in the somewhat lower-paying CNA position. On August 17, 1982, defendant filled an open CMT position by hiring a white woman by the name of Ruth Gibbs. Approximately one week later, plaintiff resigned her position with defendant and moved to Mississippi where she had relatives. The move was prompted both by plaintiff's frustration in failing to gain the promotion and by domestic problems that she and her husband were having.

Plaintiff returned to the Rolla, Missouri area approximately two months later and was rehired by defendant on or about November 8, 1982 as a CNA. At that time or soon thereafter, she made it known that she still wished to work as a CMT as soon as a position was available. At least two CMT positions did arise subsequently, but defendant filled both with white females, bypassing the plaintiff. Plaintiff asserts that the explanation given to her for her failure to receive the promotion was simply that hiring personnel failed to "think about [her]." Shortly thereafter, plaintiff resigned from her employment with defendant and later filed a complaint with EEOC. That body issued a right to sue letter to plaintiff upon a finding that there was reasonable cause to believe that defendant had unlawfully discriminated against her.[1]

The three promotions that are the focus of this suit all went to certified CMTs with good work records and previous experience in that position. Ruth Gibbs had previously worked for the defendant as a CMT and Becky Taylor, the second CMT hired during the time period in question, had at least two years experience as a CMT. Susan Forrester, the third CMT to be hired by defendant, had at least two years of CMT experience with another Rolla institution. Defendant asserts that all three of these women were better qualified for the available CMT positions than plaintiff because of their experience in that capacity. Plain-

---

**1.** The EEOC's determination was not stated as based on "probable" cause as the plaintiff has

interjected into its arguments.

tiff, although certified as a CMT, had no experience in that position.

A second area of consideration concerns defendant's claim that plaintiff was passed over for the promotion because of her husband's reputation as a drug abuser. It was felt, defendant claims, that it would have been an additional risk to place plaintiff in a position where she would have access to substantial quantities of drugs, as all CMTs did, since this situation could easily give rise to pressure from her husband to obtain drugs for his use. The evidence reveals that whatever the husband's actual involvement was with illegal drugs, and it appears that there was some, his reputation at the defendant's facility was firmly established as a drug abuser.

It appears from the evidence that the lines of communication between defendant and plaintiff regarding the reasons for her failure to gain a promotion were very poor. While it is doubtful that plaintiff was ever promised a promotion outright, it is equally doubtful that she was ever given any sound reason why the other three women were given CMT positions and she was not. It is probable that this failure to communicate, a hallmark of poor employee relations, is the reason for this suit.

### Conclusions of Law

■ Applying the four-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) for establishment of a prima facie case of discrimination, the Court finds that such a showing has been made. The plaintiff belongs to a protected class and she applied for a job for which she was qualified. Despite her qualifications she was rejected, and thereafter, the position remained open and the employer continued to seek applicants with qualifications similar to those of the plaintiff. Plaintiff was qualified for the position and her qualifications fell within the general range of qualifications possessed by the persons considered for the job. *Easley v. Empire, Inc.*, 757 F.2d 923, 930 (8th Cir. 1985). The defendant's argument that

plaintiff must show her qualifications to be equal to those of the three women hired is misplaced at this stage of the analysis. She does not need to prove her relative qualifications to meet the prima facie burden. *Hawkins v. Anheuser-Busch, Inc.*, 697 F.2d 810, 813 (8th Cir.1983).

■ Defendant's claim that plaintiff was not promoted because she was less qualified than the three women who received the CMT positions will be treated as a nondiscriminatory reason given in response to the prima facie showing. Defendant's arguments relative to plaintiff's husband will be viewed in the same light. These two arguments and the evidence surrounding them have been weighed together in determining whether plaintiff has carried her ultimate burden of persuasion. *Id.* at 814. The Court finds that she has not.

The evidence is convincing that, despite plaintiff's qualifications, she was less qualified than the persons selected for the available positions. She was a good employee as were Ruth Gibbs, Becky Taylor and Susan Forrester. She was certified as a medication technician as were the three selected CMTs. She performed at a better than average level in her CMT training program. There was no evidence as to the training performance of the other three. Nevertheless, the defendant underscores the point, and the Court finds it persuasive, that Gibbs, Taylor and Forrester all had experience as CMTs while the plaintiff had none. In assessing the qualifications of applicants for a position such as that of Certified Medication Technician, experience must reasonably play a major role in determining the relative merit of each applicant. Plaintiff had experience in a health services field, a good employment record and adequate training. Still her qualifications do not appear to measure up to those of the individuals ultimately selected.

As an additional matter, the plaintiff was saddled with the negative circumstance of her husband's reputation as a drug abuser. While this consideration would carry only moderate weight with this Court were it in a position to make the defendant's manage-

ment decision, it does appear that the defendant validly weighed this concern in its determination to bypass plaintiff for promotion. Plaintiff's argument that "an honest mistake" on the part of the nursing home and "an inadequate follow-up investigation" regarding the circumstances surrounding plaintiff's husband could somehow impose liability on the defendant is patently incorrect. Defendant was free to make inaccurate judgment of plaintiff's situation so long as it did not base any part of its decision on racial considerations. As previously alluded to, the evidence indicates that not only was plaintiff's husband's reputation firmly established at defendant's facility, there was also some basis to believe that he was deserving of such reputation. The Court finds that defendant's decision was not based on any discriminatory consideration and accordingly, defendant's motion for directed verdict will be sustained.