# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-2187

_____

| | | |
|---|---|---|
| Cota B. Allen; Leon Bee; Rickey Billingsley; Charles Doyle; Mason C. Foster; Lawrence Hancock; Jim Ingraham; Charles Hester; Joe M. Lewis; Larry McClain; Claude Miller; William Morris; Ernest Pointer, III; Clifford W. Robinson; Andrew Taylor; Willis Warner; Ira L. Whitfield; Bernard Wooten, | * * * * * * * * * * * | |
| Appellants, | * * | |
| v. | * * * | |
| Entergy Corporation; Arkansas Power and Light Company; International Brotherhood of Electrical Workers, Local 750; International Brotherhood of Electrical Workers, Local 647, | * * * * * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Appellees. | * | |

_____

Submitted: February 12, 1999
Filed:  June 22, 1999

_____

Before WOLLMAN, Chief Judge,[1] LOKEN, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

The plaintiffs are African-American employees who, as a result of a reduction in force, were laid off from their employment at one of two electrical generating plants owned by Entergy Corporation, formerly known as Arkansas Power and Light. The plaintiffs brought this race discrimination suit, challenging the validity of the selection procedure used by Entergy Corporation to determine which employees to lay off. They also argued that their union (two local chapters of the International Brotherhood of Electrical Workers) did not adequately represent their interests when it acquiesced in the selection procedure. The district court[2] granted summary judgment in favor of Entergy Corporation and the union. We affirm.

I.

The district court states the undisputed facts as follows. The plaintiffs were laid off in a reduction in force conducted by Entergy Corporation in May 1995. To facilitate the layoff, the company and the union negotiated a side agreement to the existing collective bargaining agreement, requiring all employees to take a selection test to determine which employees would be laid off. Two aptitude tests were used for the selection process--the Plant Operator Selection System (POSS) and the Power Plant Maintenance Positions Selection System (MASS)--which had been used for years by Arkansas Power and Light in the hiring process. The company agreed to allow each

[1]The Honorable Roger L. Wollman succeeded the Honorable Pasco M. Bowman as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999.

[2]The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

person to take the test twice if necessary. The plaintiffs did not pass the test after two attempts and were laid off, as were white employees who failed the test twice. Those who passed the selection test, including several African-American employees in the same seniority classifications as the plaintiffs, were retained and placed in jobs by seniority.

The plaintiffs brought this Title VII race discrimination suit against the union and the company, contending that the selection tests had a disparate impact on African-American employees, that the tests were not job related, and that the union improperly bargained away the use of the less discriminatory seniority system with which to make the layoff selections. The company and the union filed motions for summary judgment, contending that they negotiated the selection process in good faith and that the selection tests were properly validated as job related according to EEOC guidelines. The district court granted summary judgment to the company and the union, concluding that the plaintiffs failed to offer any proof to counter the validity and job relatedness of the aptitude tests. The plaintiffs now appeal.

II.

We review de novo the district court's grant of summary judgment, applying the same standards as the district court. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts and the inferences to be drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party resisting a properly supported summary judgment motion may not rest upon the mere allegations or denials of the pleadings, but by affidavit or otherwise as provided by Rule 56 must set forth specific facts showing the existence of a genuine issue for trial. See Dancy

3

v. Hyster Co., 127 F.3d 649, 653 (8th Cir. 1997), cert. denied, 118 S. Ct. 1186 (1998); see also Fed. R. Civ. P. 56(e).

"Title VII forbids the use of employment tests that are discriminatory in effect unless the employer meets 'the burden of showing that any given requirement has a manifest relationship to the employment in question.'" Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971)) (alterations omitted). The standard of proof articulated in the Griggs case and codified in 42 U.S.C. § 2000e-2(k) states that where the plaintiff has made a prima facie case of disparate impact from a selection procedure, the burden then shifts to the employer to justify the procedure by showing that it is related to safe and efficient job performance. See Donnell v. General Motors Corp., 576 F.2d 1292, 1299 (8th Cir. 1978). Once the employer meets this burden, the plaintiff must show that an alternative selection method exists, having substantial validity and less of an adverse impact; if such an alternative exists, the employer must choose the less discriminatory method. See Hawkins v. Anheuser-Busch Inc., 697 F.2d 810, 816 (8th Cir. 1983).

The parties apparently concede for summary judgment purposes that the plaintiffs set forth a prima facie case of disparate impact resulting from the testing procedures. The plaintiffs argue on appeal that there remains a material issue of fact concerning whether the company satisfied its burden of demonstrating that the selection tests were sufficiently related to the specific jobs the plaintiffs sought. In support of summary judgment, the company submitted the affidavit of Dr. David J. Kleinke, a psychologist employed as Director of Employment Testing for the Edison Electric Institute, which developed the tests used here. His affidavit explains the development of the tests. For each test, a checklist of crucial tasks was compiled by questioning thousands of plant operators and maintenance workers in fossil fuel power plants throughout the country. Based on this checklist of important tasks, an experimental testing battery was developed and sampled in the industry. Performance evaluations were mathematically correlated with the test results and confirmed that higher test

4

scores indicated a likelihood of better job performance. Dr. Kleinke stated that the tests enable power plants to choose employees who are more readily trainable and who work in a safer fashion, minimizing accidents. The union also submitted the affidavits of union business managers Gary Mitchell and Bill Heavener, who each stated that these aptitude tests had been used by Arkansas Power & Light Company "for years in the hiring process." (Appellees' App. at 7, 15.)

Dr. Kleinke expressed an opinion that the development and validation of the tests are consistent with the requirements of the EEOC's Uniform Guidelines on Employee Selection Procedure. "The EEOC has issued 'Guidelines' for employers seeking to determine, through professional validation studies, whether their employment tests are job related." Albemarle Paper Co., 422 U.S. at 430-31; see 29 C.F.R. pt. 1607. While these guidelines have not been promulgated pursuant to formal procedures established by Congress, see Albemarle Paper Co., 422 U.S. at 431, they are nevertheless "entitled to great deference" as "[t]he administrative interpretation of the Act by the enforcing agency," Griggs, 401 U.S. 433-34. The EEOC Guidelines and the Griggs case present the same message--tests with a discriminatory impact are impermissible unless the employer demonstrates through professionally acceptable methods that the tests are job related. See Albemarle Paper Co., 422 U.S. at 431. Dr. Kleinke stated his opinion that the development and validation of the tests at issue demonstrate that they are job related. He also stated that following a two-year review of the validity of the tests, the Department of Labor's Office of Federal Contract Compliance Programs concluded in 1991 "that the validation studies for both tests meet the professional standards required by the Uniform Guidelines." (Appellees' App. at 129.) Dr. Kleinke was unaware of any selection system that would do a better job of selecting qualified employees for the plant operator or maintenance worker positions.

Entergy Corporation also asserts that simultaneously with the reduction in force, it was combining the separate jobs of power plant operator and power plant maintenance into one "multi-craft" position, which required each worker to perform the

5

tasks of both jobs.  The company used the aptitude tests to help facilitate this change. The company required each employee to take an aptitude test in a basic area other than the worker's own craft to determine the suitability of an existing worker for continued employment in the new multi-craft positions.

In response to the defendants' motions for summary judgment, the plaintiffs submitted their own affidavits, mostly complaining of discriminatory treatment by the company in general, complaining of the union's conduct in acquiescing to the tests, or complaining of the manner in which the tests were administered.  Only one plaintiff, Clifford Robinson, submitted an affidavit purporting to rebut the job relatedness of the tests.  Mr. Robinson stated in conclusory fashion that the test he took was biased and "had no relevancy to the jobs that [he] performed."  (Appellants' App. at 65 (emphasis omitted).)

This statement is insufficient to preclude summary judgment.  Mr. Robinson's affidavit does not explain how the test differed from either the old job he performed or the new job he sought that required multi-craft skills.  Mr. Robinson's conclusory affidavit "is devoid of any specific factual allegations" challenging the validity of the test, and as such, it cannot withstand a properly supported summary judgment motion. Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998).  The plaintiffs did not offer any expert testimony, or any other evidence, to rebut Dr. Kleinke's affidavit testimony that the tests were valid and job related.  Likewise, the plaintiffs offered nothing to rebut Dr. Kleinke's testimony about the Department of Labor's conclusion that the tests are consistent with the EEOC guidelines, which require selection tests to be job related.  The record includes the unrebutted testimony that the same tests have been used for years in the hiring process at the power plants where the plaintiffs worked and that the company needed the aptitude tests to indicate whether the existing employees would be suitable for the new multi-craft positions. One plaintiff's conclusory assertion that the test was not related to the job he had performed is insufficient to prevail over the defendants' properly supported summary

judgment motion. See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment.")

The plaintiffs contend alternatively that even if the defendants met their burden to demonstrate that the tests were valid and job related, they still are not entitled to summary judgment because a less discriminatory selection procedure was available. They assert that the seniority system, which was abandoned as a selection method for the reduction in force by agreement of the union in favor of the POSS/MASS testing systems, was an available alternative selection procedure which would cause less of a disparate impact on minorities, and accordingly, the company and the union acted improperly by abandoning the seniority system. In response, the defendants point to Dr. Kleinke's expert opinion that he knew of no other tests that would substitute for the POSS and MASS and be equally job related.

There is no question that a seniority system is a legitimate and non-discriminatory basis for accomplishing a reduction in force. See Bright v. Standard Register Co., 66 F.3d 171, 173 (8th Cir. 1995). This does not mean, however, that an aptitude selection test is necessarily illegally discriminatory. The defendants established that the tests were valid and job related, and demonstrated that they were necessary to determine which employees would be best suited to the new multi-craft positions. The plaintiffs make only a conclusory argument that the seniority system would have been less discriminatory. They make no showing to suggest that seniority in the previous single-craft positions would be an equally accurate predictor of success in the new multi-craft positions.

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT